**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Paul R. EDGECOMB (88–3853) and
Gordon R. Edgecomb (88–3943),
Defendants–Appellants.**

Nos. 88–3853, 88–3943.

United States Court of Appeals,
Sixth Circuit.

Argued June 4, 1990.

Decided Aug. 8, 1990.

Linda M. Betzer, argued, Office of the U.S. Atty., Cleveland, Ohio, for plaintiff-appellee.

Rick Drake, argued, Chagrin Falls, Ohio, for Paul R. Edgecomb.

Randy D. Briggs, argued, Akron, Ohio, for Gordon R. Edgecomb.

Before JONES and RYAN, Circuit Judges, and PECK, Senior Circuit Judge.

NATHANIEL R. JONES, Circuit Judge.

Defendants Paul R. Edgecomb ("Paul") and Gordon R. Edgecomb ("Gordon") appeal their sentences resulting from their guilty pleas to conspiracy to possess cocaine with intent to distribute. For the following reasons, we affirm in part and remand in part.

I.

On January 11, 1988, Gordon was indicted on three counts of possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) (1988) and one count of conpiracy to possess cocaine with intent to distribute, in violation of 21 U.S.C. § 846. On April 6, 1988, a superseding indictment was filed with additional counts and a conspiracy date of "on or about January, 1987, to on or about December 11, 1987 ..." J.App. (88-3943) at 13. On May 31, 1988, Gordon pled guilty to count one of the superseding indictment, which charged him with conspiracy. On August 19, 1988, the United States District Court for the Northern District of Ohio, Judge Alvin Krenzler presiding, sentenced Gordon to 151 months imprisonment.

On February 9, 1988, Paul, who is Gordon's brother, was indicted for possession of cocaine with intent to distribute. On April 6, 1988, Paul was indicted as a part of the superseding indictment. On May 31, 1988, Paul pled guilty to the conspiracy count of the indictment. Under the plea agreement, plaintiff-appellee United States of America ("the government") agreed to make a binding recommendation that any sentence imposed not exceed 151 months. J. App. (88-3853) at 31. On August 16, 1988, the court sentenced Paul to 136 months imprisonment.

II.

Both Paul and Gordon pled guilty to the conspiracy count in the indictment, which specified overt acts of possession of cocaine with intent to distribute from January 1987 to December 11, 1987. The Sen-

tencing Reform Act of 1984 provided that the Sentencing Guidelines shall not go into effect until November 1, 1987. Comprehensive Crime Control Act of 1984, Pub.L. No. 98–473, ch. II, § 235(a)(1), 98 Stat. 2031 (1984), *amended by* Sentencing Reform Act Amendments Acts of 1985, Pub.L. No. 99–217, § 4, 99 Stat. 1728 (1985), *and* Criminal Law and Procedure Technical Amendments Act of 1986, Pub.L. No. 99–646, § 35, 100 Stat. 3599 (1986). In 1987, Congress further amended the Act, adding that the Act, "shall apply only to offenses committed after" the November 1, 1987 effective date. Sentencing Act of 1987, Pub.L. No. 100–182, § 2(a), 101 Stat. 1266 (1987), *codified at* 18 U.S.C. § 3351 note. The language of the Act is unclear as to whether the Guidelines apply to crimes such as conspiracy, the commission of which began before November 1, 1987 and ended after that date (hereinafter referred to as "straddle" crimes). The district court ruled that the Sentencing Guidelines were applicable to Gordon because the conspiracy ended after the November 1, 1987 effective date. This court reviews *de novo* the applicability of the Sentencing Guidelines. *United States v. Gray*, 876 F.2d 1411, 1418 (9th Cir.1989), *cert. denied*, — U.S. —, 110 S.Ct. 2168, 109 L.Ed.2d 497 (1990).

On appeal Gordon contends that (1) the conspiracy to which he pled guilty ended *prior to* November 1, 1987, and (2) even if it did continue beyond the effective date, the Sentencing Guidelines are not applicable.[1] Gordon's first argument is that his conspiracy ended prior to November 1, 1987. Specifically, Gordon notes that the agreement to commit the conspiracy was formulated on or about January 1987. Thus, he contends that the conspiracy took place before November 1, 1987. Moreover, Gordon maintains that he told the court at the sentencing hearing that he was involved in a conspiracy up until October 1987, but not afterward. Most important,

Gordon contends that he authorized his attorney to contact the government in order to discuss the possibility of a plea bargain and related cooperation with the government, therefore effectively withdrawing from the conspiracy. According to Gordon, his attorney first made contact with the U.S. Attorney in October 1987.

While the Sixth Circuit has not yet addressed the issue of the applicability of the Guidelines to straddle crimes,[2] several other circuits have. Each of these circuits has ruled that the Guidelines apply to conspiracies which began prior to the effective date and terminated after that date. *See United States v. Story*, 891 F.2d 988, 994–95 (2d Cir.1989) (legislative history reveals an intent to apply the Guidelines to straddle cases; such an application does not violate the Ex Post Facto Clause unless the post-Guidelines sentence was greater than any possible pre-Guidelines sentence); *United States v. Rosa*, 891 F.2d 1063, 1069 (3d Cir.1989) (Guidelines applicable where conspiracy straddled effective date; court rejected argument that defendant withdrew from the conspiracy); *United States v. Lee*, 886 F.2d 998, 1003 (8th Cir.1989) (Guidelines applicable to straddle cases), *cert. denied*, — U.S. —, 110 S.Ct. 748, 107 L.Ed.2d 765 (1990); *Gray*, 876 F.2d 1411 (9th Cir.1989) (same). Thus, in the instant case, so long as there is a showing that Gordon's participation in the conspiracy continued beyond November 1, 1987, the district court was correct in applying the Guidelines to Gordon's case; for the Guidelines sentence is not greater than the pre-Guidelines penalty (ten years to life imprisonment).

The indictment recounted specific overt acts committed in the furtherance of the conspiracy in November and December 1987, and the Assistant U.S. Attorney read some of these acts into the record at the

---

**1.** Paul filed a supplemental appellate brief in which he essentially repeated some of Gordon's arguments concerning this issue. Even though Paul did not raise this issue below, we shall review his arguments since an issue of statutory construction with potential constitutional implications is involved.

**2.** At the time this opinion was circulating prior to publication, an opinion by Judge Kennedy was circulating which also addresses the issue of "staddle crimes." See, *United States v. Walton*, 908 F.2d 1289 (6th Cir.1990).

plea hearing, including evidence that Gordon brought one kilogram of cocaine from Florida to Ohio in November and was arrested when he attempted to sell the cocaine on December 11, 1987. J.App. (88–3943) at 123. Gordon's contention that the agreement ended before November 1, 1987 is not persuasive. Conspiracy is a continuing crime which is not completed at the conclusion of the agreement. *See United States v. Baresh,* 790 F.2d 392, 404 (5th Cir.1986). In addition, Gordon's contention that he pled guilty to a conspiracy only before November 1, 1987 is belied by the record. The plea agreement specifically provided that Gordon plead guilty to count one of the indictment, which stated that the conspiracy continued until December 11, 1987, the date of arrest. If Gordon disagreed with the dates of the conspiracy, he should have attempted to negotiate a change in the plea agreement. Finally, any direction by Gordon to his counsel to negotiate with the government did not constitute a withdrawal from the conspiracy. To prove a withdrawal from a conspiracy, "a conspirator must show he acted affirmatively to defeat or disavow the purpose of the conspiracy." *United States v. Nicoll,* 664 F.2d 1308, 1315 n. 6 (5th Cir.), *cert. denied,* 457 U.S. 1118, 102 S.Ct. 2929, 73 L.Ed.2d 1330 (1982). If Gordon had withdrawn from the conspiracy, he would not have continued to deal cocaine. Thus, we believe that it is clear that Gordon's participation in the conspiracy continued beyond November 1, 1987, subjecting the crime to application of the Sentencing Guidelines.

Gordon's second argument is that even if he did not withdraw from the conspiracy, the government should be estopped from applying the Sentencing Guidelines because the government misled him into committing further criminal acts. Gordon contends that the government informed his attorney that it was interested in his cooperation and the U.S. Attorney knew or should have known that Gordon had to continue his criminal conduct to stay in a position to cooperate with the authorities. According to Gordon, his attorney met with Assistant U.S. Attorney Linda Betzer on several occasions in October and November of 1987.

Betzer first indicated that she was interested in Gordon's cooperation, but would have to check with other law enforcement agencies. During contacts in November, Betzer wanted additional information about the people against whom Gordon could testify. Gordon claims that when questioned in November, Betzer specifically denied to Gordon's attorney that Gordon was under a current investigation, even though there was an investigation at that time. Gordon maintains that if he had immediately ceased his drug-related activities and walked away from the illegal business, then his sellers and buyers would have become suspicious, reducing his ability to cooperate to zero. He contends that his activity after November 1, 1987 was solely to keep a "hot" profile on the streets so that others would be more willing to deal with him when he was later cooperating with the federal agents. The government specifically denies entering into any type of a deal or agreement with Gordon or inducing Gordon to commit further criminal acts.

While there is no direct case law on Gordon's claim, he cites *United States v. Robinson,* 763 F.2d 778, 785 (6th Cir.1985), which set forth four factors to be used in determining whether police conduct was so outrageous as to violate due process: "the need for the type of police conduct, the impetus for the scheme, the control of the government exerted over the criminal enterprise, and the impact of the police activity on the commission of the enterprise." In *Robinson,* the court concluded that the role of the undercover government agent in the conspiracy did not constitute outrageous conduct because he did not initiate the discussions of the criminal activity and merely followed the conspirators instructions. In the instant case, the district court made no specific findings of fact concerning the government's actions. At the sentencing hearing, the court denied Gordon's renewed motion for the court not to apply the Sentencing Guidelines, but it did not set forth its reasons for doing so. Whether the government "induced" Gordon to commit further criminal activity is a factual issue which must be resolved by the dis-

trict court. As such, we conclude that a remand for a factual finding as to this issue would be appropriate.

### III.

Gordon makes several other arguments concerning the validity of his sentence, the first of which is joined by Paul.

### A.

■ Both Gordon and Paul argue that the district court did not adequately explain the term "conspiracy" to them. Under Fed.R.Crim.P. 11(c), the district court must inquire as to whether the defendant understands the nature of the charge against him. In *United States v. Van Buren*, 804 F.2d 888, 892 (6th Cir.1986), the court noted that "[w]here the crime is easily understood, several courts have held that a reading of the indictment, or even a summary of the charges in the indictment and an admission by the defendant, is sufficient to establish a factual basis under Rule 11." Nevertheless, in the *Van Buren* case itself, the court ruled that "[t]he charge of utilizing a communication facility to further a conspiracy or in the commission of a conspiracy is a complex charge that a lay person would not easily understand.... Because the charge of the indictment is complex and the Court failed to determine that defendant understood it, the reading of the indictment and defendant's response that he had no further questions do not establish a factual basis for the plea." *Id.*

In the instant case, the court recited the count of the indictment and asked both Gordon and Paul if they understood the charge against them and if they discussed the charge with their attorneys. In addition, the government read the facts constituting the conspiracy. Gordon and Paul argue that conspiracy is not a simple term, particularly here where Gordon denies committing the overt acts after October 1987. However, the record does not reflect any statement by either Gordon or his counsel at the Rule 11 proceeding denying the commission of overt acts after October 1987. As such, we believe that the conspiracy involved here, as read into the record by

Assistant U.S. Attorney Betzer at the hearing, is simple enough for a lay person to understand, in contrast to the "use of a communication facility for the furtherance of a conspiracy" charge in *Van Buren*. Therefore, we do not find a Rule 11 violation.

### B.

■ Next, Gordon argues that the trial court failed to make findings of fact under Fed.R.Crim.P. 32. Section 6A1.3 of the Guidelines specifies that "[t]he court shall resolve disputed sentencing factors in accordance with Rule 32(a)(1) ... notify the parties of its tentative findings and provide a reasonable opportunity for the submission of oral or written objections before imposition of sentence." Rule 32(a)(1) requires that the court provide a copy of the Presentence Report (PSR) prior to the sentencing hearing and allow the defendant's counsel to comment on the PSR at the hearing. Rule 32(c)(3)(D) provides that if there is any allegation of a factual inaccuracy, the court must make a written factual finding or a determination that such a finding is not necessary. If a district court fails to make a factual finding, this court must remand for resentencing. *United States v. Manni*, 810 F.2d 80, 83 (6th Cir. 1987).

In the instant case, the Probation Department filed its PSR; subsequently, Gordon filed objections to the report. The probation officer then included these objections in the PSR under a section entitled "UNRESOLVED OBJECTIONS." At the sentencing hearing of August 19, 1988, the court asked Gordon's attorney if he was satisfied with the report as it was, and his attorney answered affirmatively; earlier, he stated to the court that he had no additions or deletions to the PSR. J.App. (88–3943) at 141, 152. The government maintains that the failure to object mollifies any concern with Rule 32. Gordon argues that his lawyer did not question the accuracy of the PSR at the hearing because a portion of the PSR already included his objections. Upon review of the transcript, we find that since the objections were clearly in the

PSR, the district court had an obligation to make specific findings of fact. Thus, we remand for factual findings and resentencing.

### C.

Gordon next argues that the government violated the plea agreement in two ways: by making a recommendation for a sentence and by failing to disclose Gordon's cooperation to the court. "What the parties agreed to [in a plea agreement] is a question of fact" subject to the clearly erroneous standard. *Baker v. United States*, 781 F.2d 85, 90 (6th Cir.), *cert. denied*, 479 U.S. 1017, 107 S.Ct. 667, 93 L.Ed.2d 719 (1986). The plea agreement provided that the government "will not make a recommendation [with] regards to sentencing" and that the government "advise any Court or prosecutor of the extent of [Gordon's] cooperation ..." J.App. (88–3943) at 53–54. First, Gordon argues that the government recommended a sentence in violation of the plea agreement. At the plea acceptance hearing, the court asked about the Sentencing Guidelines as applied to Gordon. Assistant U.S. Attorney Betzer replied that Gordon is pleading with no sentencing recommendation attached, but she went ahead to explain that the government's computation of a base offense level of 36 resulted in a sentencing range of 188 to 235 months. She then noted that Gordon would likely object to the offense level. *Id.* at 131. Second, Gordon argues that the government did not mention his cooperation, despite the requirement of the plea agreement. Specifically, Gordon contends that Ms. Betzer referred to Gordon's assistance with two names, even though he actually supplied four names.

▄▄ "When a promise by the prosecutor induces a defendant to plead guilty[,] that promise must be fulfilled." *United States v. Holman*, 728 F.2d 809, 813 (6th Cir.), *cert. denied*, 469 U.S. 983, 105 S.Ct. 388, 83 L.Ed.2d 323 (1984). With regard to the promise not to recommend a sentence, we do not believe that the prosecutor violated the plea agreement. She noted the calculations under the Guidelines and stated to the court that such calculations would be the subject of disagreement. The second alleged breach—the alleged failure of the government to detail Gordon's cooperation—is a matter appropriate for remand. It is not clear from the record the extent to which Gordon cooperated with the government and the detailing of any such cooperation by the Assistant U.S. Attorney. Since the failure to note the cooperation of Gordon was an objection to the sentencing report under the heading of "acceptance of responsibility," we believe that this issue should be remanded to the district court for a factual finding.

### IV.

Paul makes several arguments which apply only to his conviction.

### A.

▄ Paul claims that there was a thirty-two day period between his return to Cleveland and his indictment, which violates the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.* Under the Speedy Trial Act, the indictment must be filed within thirty days of the arrest; and if no indictment is filed, the charge is dismissed. 18 U.S.C. § 3161(b); § 3162. However, the periods of delay "resulting from any proceeding relating to the transfer of a case or the removal of any defendant from another district under the Federal Rules of Criminal Procedure ..." are not included in the calculation of the thirty-day period. 18 U.S.C. § 3161(h)(1)(G). In addition, section 3161(h)(1)(H) gives the United States Marshal ten days to transport the defendant pursuant to the removal order.

Paul was arrested in Florida on December 11, 1987 pursuant to an arrest warrant issued in the Northern District of Ohio. On December 16, 1987, Paul appeared before a magistrate in the Southern District of Florida and waived removal. The Warrant of Removal was filed in Cleveland on December 28, 1987. On January 8, 1988, the magistrate in the Northern District of Ohio set an initial appearance for January 13, 1988. The government argues that the

proper computation under the Speedy Trial Act gives the U.S. Marshal ten days to get from Florida to Ohio. Excluding Saturdays, Sundays and holidays, as required under Fed.R.Crim.P. 45(a) for any time limits less than eleven days, this ten-day time period ended on January 12, 1988. Since the indictment was filed February 9, 1987, twenty-nine days after return, the government contends that there is no violation of the Speedy Trial Act. Paul contends that the warrant of removal was signed on December 16, 1987, even though it was not docketed in Cleveland until December 28, 1987. Thus, Paul contends that the ten-day period starting on December 16, 1987 ends on December 31, 1987, which is more than thirty days prior to the filing of the indictment.

In *United States v. Hernandez*, 863 F.2d 239 (2d Cir.1988), the Second Circuit confronted a similar situation. The court held that a forty-eight day delay between the arrest and the indictment did not violate the Speedy Trial Act. Specifically, the court noted that the period between the arrest in Nevada and the initial appearance in Vermont constitutes excludable time under both sections 3161(h)(1)(G) and (H). The court relied heavily on the Guidelines for the Speedy Trial Act, which were the subject of favorable comment by the Senate Judiciary Committee when the Speedy Trial Act was amended. The Guidelines note that "the time between the defendant's arrest in another district on a complaint from this district and his appearance (or arrival) in this district is excluded from the arrest-indictment or information interval.... [However,] the period of delay found by the court to be unreasonable shall not be excluded." *Id.* at 242. Thus, we conclude that the period between December 11, 1987 (arrest) and January 13, 1988 (Paul's initial appearance) is excludable from the Speedy Trial Act computations. Since there are less than thirty days between January 13 and February 9, we find that there was no Speedy Trial Act violation.

### B.

Next, Paul argues that his sentence violated his plea agreement. Specifically, he contends that his plea agreement promised a 120 month sentence and he was sentenced to 136 months. This argument is meritless. The plea agreement states that the government will make a binding recommendation to the sentencing court that the sentence not exceed 151 months. J.App. (88–3853) at 31. A sentence of 136 months does not exceed this amount.

### C.

▮▮▮ Finally, Paul argues that he was denied his right to speak before sentencing because the trial judge did not issue "a personal invitation to speak prior to sentencing." *Green v. United States*, 365 U.S. 301, 305, 81 S.Ct. 653, 655, 5 L.Ed.2d 670 (1961). Fed.R.Crim.P. 32(a)(1)(C) provides that before sentencing, the court shall "address the defendant personally and determine if the defendant wishes to make a statement and to present any information in mitigation of the sentence." In *United States v. Thomas*, 875 F.2d 559, 563 (6th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 189, 107 L.Ed.2d 144 (1990), this court held that *"the district court must personally and unambiguously invite the defendant to speak in his own behalf."* (emphasis in original).

The district court's Judgment of Conviction and Sentencing Order of Paul R. Edgecomb states that, "The court then provided counsel for the defendant and the defendant himself with the opportunity to make a statement in the defendant's behalf and to present any information in mitigation of punishment." J.App. (88–3853) at 37. Upon review of the transcript of the August 15, 1988 sentencing hearing, we find that the district court did not "personally and unambiguously invite" Paul to speak on his behalf. Instead, Paul only spoke in response to direct questions of the court. However, specific questions from the court concerning aspects of the PSR are not adequate to satisfy the requirements of Rule 32(a)(1)(C).

### V.

For the foregoing reasons, we VACATE and REMAND Gordon Edgecomb's sen-

tence for (1) a determination of whether there was outrageous police conduct which would render the Guidelines inapplicable, (2) specific factual findings on the objections to the PSR, and (3) a finding of whether the prosecutor adequately informed the court of Gordon's cooperation; and VACATE and REMAND Paul Edgecomb's sentence for an opportunity to speak during resentencing.