959 F.2d 236
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
James J. BYRD and Gary Byrd, Defendants-Appellants.
 Nos. 91-6226, 91-6227.
 United States Court of Appeals, Sixth Circuit.
 April 7, 1992.
 
 Before MILBURN and SUHRHEINRICH, Circuit Judges, and TIMBERS, Senior Circuit Judge.*
 PER CURIAM.
 
 
 1
 Defendants James Jimmy Byrd and Gary Byrd appeal their sentences imposed by the district court for aiding and abetting the manufacture and possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. On appeal, the issues raised by defendants are as follows: (1) whether the district court erred in sentencing the defendants by using a number of marijuana plants other than the amount admitted to; (2) whether there was insufficient evidence to support the district court's finding that the plants which had been cut were in fact marijuana; (3) whether the district court improperly exceeded the range of penalties set forth on the indictment by imposing a sentence of 63 months; and (4) whether the presentence report found, as a fact, that the officers were unable to determine what marijuana belonged to whom and whether this finding was accepted by the district court and is now binding. For the reasons that follow, we affirm.
 
 I.
 
 2
 On December 7, 1990, a federal grand jury returned a one-count indictment charging defendants with aiding and abetting the manufacture and possession with intent to distribute marijuana, a Schedule I controlled substance, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. On April 29, 1991, at a second arraignment, defendants entered guilty pleas on the indictment. On June 27, 1991, the district court held a hearing to determine the quantity of marijuana involved in the offense. On October 15, 1991, after determining that 107 marijuana plants were "attributable" to defendants, the court sentenced each defendant to 63 months incarceration to be followed by four years of supervised release and a $50 mandatory special assessment. This timely appeal followed.
 
 
 3
 James Jimmy Byrd and Gary Byrd are father and son, respectively. They live at one end of the Grassy Branch and Smith Hollow area of Clay County, Kentucky. In addition to the Byrds' residence, three other residences are strung out along the Grassy Branch and Smith Hollow area. These residences are occupied by Ellis and Ernest Smith, Pearl Baker, and Anthony and Michael Baker. Apparently, each of these persons is a member of the extended Smith family after which Smith Hollow is named.
 
 
 4
 On September 18, 1989, the United States Forest Service was conducting an aerial surveillance of this isolated, hilly area and discovered several plots of marijuana plants in Grassy Branch and Smith Hollow. Ground agents drove to the area and began cutting and burning the marijuana. A total of 20 plots of marijuana containing 458 growing plants and 71 harvested plants were discovered and destroyed.
 
 
 5
 Eight plots were located around and above James Jimmy Byrd's and Gary Byrd's residence. Well-worn footpaths led from the Byrds' residence through the woods to these eight marijuana plots containing 98 growing plants and pieces of nine previously harvested plants for a total of 107 plants.
 
 
 6
 Upon request, James Jimmy Byrd's wife consented to a search of the Byrd residence during which agents discovered six plastic bags containing 941 grams of marijuana in a freezer located in the house. A sleeping bag containing marijuana and nine boxes of marijuana buds were found outside near the residence. James Jimmy Byrd admitted that the 941 grams of marijuana found in the freezer belonged to him and that he had grown about four or five marijuana plants. He also showed the agents two areas which he had used for drying marijuana. Gary Byrd confessed that he and his father had been growing marijuana together. He also admitted that he and his father had harvested about seven or eight plants and used the attic of an old abandoned house to dry the marijuana.
 
 
 7
 Further evidence indicated that other members of the Smith family were also involved in growing marijuana. For example, Ernest Smith confessed to growing one or two patches of marijuana at the opposite end of the hollow from the Byrd residence. Gary Byrd stated to agents that Anthony Baker also grew marijuana. He also stated that when he learned of the agents' presence, he "ran from grandma's house to Pearl's house to warn everybody you were here, but everybody already knew you were here." J.A. at 175.
 
 II.
 A.
 
 8
 The government bears the burden of proving conduct relevant to sentencing under the United States Guidelines by a preponderance of the evidence. See U.S. v. Moreno, 933 F.2d 362, 374 (6th Cir.), cert. denied, 112 S.Ct. 265 (1991).[2] In sentencing the defendants, the district court must determine whether the government has met its burden of proof regarding alleged relevant conduct. Id. Absent clear error, we will not set aside a district court's findings of fact underlying a sentence imposed pursuant to the United States Guidelines. 18 U.S.C. § 3742. See also Moreno, 933 F.2d at 374. Clear error is evident when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." 933 F.2d at 374. The remaining issues not concerned with sufficiency of the evidence shall be reviewed de novo. U.S. v. Edgecomb, 910 F.2d 1309, 1311 (6th Cir.1990) (the applicability of the Sentencing Guidelines shall be reviewed de novo); Whitney v. Brown, 882 F.2d 1068, 1071 (6th Cir.1989) (a district court's conclusions of law are reviewed de novo).
 
 B.
 
 9
 Defendants contend that insufficient evidence exists to support the district court's finding that defendants were responsible for growing 107 marijuana plants, the amount considered when defendants were sentenced. Instead, defendants argue, the evidence supported a finding that defendants were responsible only for the 941 grams of marijuana found in the freezer which, they contend, came from the "four to five" marijuana stalks they admitted growing. The district court, however, held that the evidence of the paths leading from the Byrds' home to the eight plots located around the Byrd home was sufficient to link defendants to the 98 plants growing in the plots and the nine pieces of marijuana stalks previously harvested from the plots. The district court further determined that the 941 grams of marijuana buds came from the nine harvested stalks. Thus, it sentenced defendants on the basis that they were responsible for 107 plants. As a result, defendants argue that they were faced with a minimum mandatory sentence of 63 months rather than a maximum sentence of 60 months or five years.
 
 
 10
 Defendants argue that the district court erroneously relied on the defendants' "mere presence" near the eight plots to attribute the 107 stalks to them and that there is no evidence to show that they exercised control or ownership over the 107 marijuana stalks. In support of their argument, defendants rely on U.S. v. White, 932 F.2d 588, 590 (6th Cir.1991) (per curiam), in which we held insufficient evidence existed to support the defendant's conviction for possession of marijuana "where the only evidence linking [defendant] White to the marijuana was the fact that he lived three feet from the patch." Id. at 589. However, in this case, both defendants admitted to growing, stripping, and drying several stalks of marijuana. In addition, James Jimmy Byrd took the agents to two places he used to dry the marijuana, and Gary Byrd admitted using the attic of an abandoned house to dry marijuana. Clearly, the Byrds' connection with marijuana was more than a "mere presence" near the places where it was growing. Based on this evidence together with the evidence of well-worn paths leading from the Byrds' home to the eight plots of marijuana, the district court's finding that defendants were responsible for 107 stalks of marijuana is not clearly erroneous.
 
 
 11
 Defendants also argue that because no laboratory analysis was conducted on the plants growing in the eight plots, insufficient evidence exists to determine that the plants were actually marijuana. In U.S. v. Schrock, 855 F.2d 327, 334 (6th Cir.1988), we held that scientific identification of a substance is not a prerequisite to a conviction for a drug related offense and that the identity of a drug may be established through circumstantial evidence. Defendants admit that an analysis was conducted on the plant material in defendants' freezer which proved conclusively that it was marijuana. In addition, the agents who personally cut and burned the growing plants identified them as marijuana. Thus, the district court's finding that the plants in question were marijuana plants is not clearly erroneous.
 
 C.
 
 12
 Defendants also argue that they were denied due process of law because the government destroyed the marijuana plants used as evidence against them, and, therefore, they had no opportunity to prove that the plants were not marijuana. The case which defendants rely on in support of this argument, U.S. v. Doty, 714 F.2d 761 (8th Cir.1983), precedes the two leading Supreme Court cases on this subject and does not accurately reflect the present state of law on this issue.
 
 
 13
 In order to show an error of constitutional magnitude arising from the destruction of evidence, the evidence "must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by any other means." California v. Trombetta, 467 U.S. 479, 489 (1984). See also Kordenbrock v. Scroggy, 919 F.2d 1091, 1103 (6th Cir.) (en banc), cert. denied, 111 S.Ct. 1608 (1991). In this case, defendants do not allege that the burned plants possessed an apparent exculpatory value. They simply argue that they had no opportunity to examine the plants for exculpatory value. It is entirely speculative and doubtful that the plants possessed any exculpatory value.
 
 
 14
 In Arizona v. Youngblood, 488 U.S. 51 (1988), the Supreme Court held that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." 488 U.S. at 58; see also Kordenbrock, 919 F.2d at 1103. In this case, there is no evidence of bad faith on the part of the police. Therefore, based on Trombetta and Youngblood, defendants' argument regarding the destruction of the marijuana plants fails.
 
 D.
 
 15
 Defendants next argue that they pled guilty without being informed that they could be sentenced for more than 60 months or five years of incarceration. Specifically, defendants state:
 
 
 16
 The indictment upon which these two (2) defendants entered their guilty plea showed clearly on its face that the penalty could not be more than five (5) years, a $250,000.00 fine, or both. The defendants' position is that because of the failure of the United States to inform the Court and the defendants of their position relative to the amounts of marijuana, which if over 100 plants, requires a mandatory minimum of five (5) years, the defendants would not have entered their guilty pleas.
 
 
 17
 Appellant's Brief at 8.
 
 
 18
 However, at the second arraignment, the district court stated to defendants:
 
 
 19
 Now, I understand that may sound a little bit confusing, but under your [defendants'] theory, at least, Mr. James Jimmy Byrd and Mr. Gary Byrd, you could receive up to five years or a $250,000 fine or both, plus a term of supervised release of at least two years, and if you are convicted under what the government says that you were involved in, you could receive five to 40 years and a $2,000,000 fine or both, plus supervised release of at least three years.
 
 
 20
 J.A. 128-29. The district court then gave defendants the opportunity to withdraw their guilty pleas before the court accepted them, but defendants declined. Thus, defendants were fully informed that they could receive a sentence of more than five years if their pleas of guilty were accepted. Brady v. United States, 397 U.S. 742 (1970) (a guilty plea is valid if entered voluntarily, knowingly and intelligently).
 
 E.
 
 21
 Finally, defendants argue that the district court adopted the factual findings of both defendants' presentence reports, and, therefore, it was bound by the factual findings in the presentence reports including those stated in paragraph 18. Paragraph 18 of the presentence reports states:
 
 
 22
 Altogether, the officers located 458 plants growing in 20 plots around the four residences. They were unable to determine which plots belonged to whom. The officers determined, in addition to the 458 growing plants, an additional 71 marijuana plants had already been harvested by unknown growers.
 
 
 23
 J.A. 63, 89.
 
 
 24
 Defendants' argument is meritless. Defendants cite nothing in the record to support their contention that the district court adopted the factual findings of paragraph 18. In addition, the presentence reports recommend that defendants be held responsible for 107 marijuana plants. J.A. 70, 90. Moreover, it is the proper function of the district court to examine the evidence available and draw its own conclusions concerning the amount of an illegal substance relevant to a defendant's sentence under the Guidelines. See, e.g., Moreno, 933 F.2d 374.
 
 III.
 
 25
 For the foregoing reasons, the defendants' sentences are AFFIRMED in all respects.
 
 
 
 *
 Honorable William H. Timbers, Senior Circuit Judge for the United States Court of Appeals for the Second Circuit, sitting by designation
 
 
 [2]
 The government correctly states that in U.S. v. Rigsby, 943 F.2d 631 (6th Cir.1991), cert. denied, --- S.Ct. ----, 1991 WL 253451 (1992), we expressed concern that the quantity of an illegal substance is not simply a sentencing issue but instead is an element of the offense which should be proven beyond a reasonable doubt at trial. Nevertheless, this court ultimately determined that it was bound by precedent to conclude that no due process or Sixth Amendment violation occurred where the district court refused to submit the issue of the quantity of drugs involved in the offense to the jury. Id. at 643