**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Kimberly Hobbs LOWERY (94–6012), and
Joseph Edward Pelfrey (94–6013),
Defendants–Appellants.**

Nos. 94–6012, 94–6013.

United States Court of Appeals,
Sixth Circuit.

Argued June 6, 1995.

Decided July 31, 1995.

Rehearing Denied Aug. 24, 1995.

David A. Marye, Asst. U.S. Atty. (argued and briefed), Lexington, KY, for U.S.

Michael J. Curtis (argued and briefed), Ashland, KY, for Kimberly Lowery.

Robert E. Nicholson (argued and briefed), New Brunswick, NJ, for Joseph Pelfrey.

Before: NELSON and RYAN, Circuit Judges, and ECHOLS, District Judge.*

RYAN, Circuit Judge.

Kimberly Hobbs Lowery appeals from her convictions and sentence entered after a jury found her guilty of (1) conspiring to commit a bank robbery, 18 U.S.C. §§ 371, 2113(a), (d); (2) aiding and abetting Edison Wayne Lowery, her husband, in bank robbery and in jeopardizing the life of a person by using a dangerous weapon, 18 U.S.C. §§ 2, 2113(a), (d); and (3) aiding and abetting Ed Lowery in using and carrying a firearm during a crime of violence, 18 U.S.C. §§ 2, 924(c)(1). Kim Lowery's codefendant, Joseph Edward Pelfrey, pleaded guilty to the latter two counts, and now seeks to vacate his plea to Count 3 because the district court failed to inform him of the nature of the charge as required by Federal Rule of Criminal Procedure 11(c)(1).

We affirm Kim Lowery's conviction and sentence, but vacate Pelfrey's plea to Count 3 and remand.

## I.

In January 1994, a federal grand jury returned an indictment against Kim Lowery and Pelfrey for their involvement in a bank robbery with Ed Lowery. By then, Ed Lowery had confessed to federal law enforcement agents that he, Kim, and Pelfrey committed the April 13, 1993 robbery of the Kentucky Bank and Trust of Greenup County in South Shore, Kentucky. The indictment charged Kim and Pelfrey with three counts: (1) conspiring with each other and Ed Lowery to commit the bank robbery, 18 U.S.C. §§ 371, 2113(a), (d); (2) aiding and abetting Ed Lowery in robbing the bank and in jeopardizing the life of a person by using a dangerous weapon, 18 U.S.C. §§ 2, 2113(a), (d); and (3) aiding and abetting Ed Lowery in using and

* The Honorable Robert L. Echols, United States District Judge for the Middle District of Tennes- see, sitting by designation.

carrying a firearm during a crime of violence, 18 U.S.C. §§ 2, 924(c)(1). On March 16, 1994, Pelfrey pleaded guilty to Counts 2 and 3.

Kim went to trial and asserted a coercion and duress defense. Pelfrey and Ed Lowery testified against Kim. Their testimony revealed that Pelfrey and the Lowerys[1] became friends some months before the April 1993 bank robbery. At various times in 1993, the three discussed robbing a bank. A few months before the robbery, Ed and Kim discussed committing a robbery in order to solve their financial difficulties. Ed and Pelfrey discussed the subject one or two days before the robbery. The day before the robbery, the Lowerys again discussed the possibility of robbing a bank. Kim asserted that the time was right; a prison riot at Southern Ohio Correctional Facility was keeping most of the state and local police busy.

On April 13, 1993, the defendants and Ed Lowery prepared for the robbery. Ed sawed the barrel off Kim's shotgun. Kim cut pantyhose into masks and gloves. The three cohorts planned that Ed and Pelfrey would enter and rob the bank while Kim waited in a get-away car. The three drove from Ohio to Kentucky, where Kim selected the Kentucky Bank and Trust, a bank the Lowerys had earlier targeted as vulnerable. Kim delivered Ed and Pelfrey to the rear of the Bank and Trust building, and then parked at a pre-designated spot. Ed and Pelfrey proceeded up the alley between the bank and the adjoining building with Ed carrying the sawed-off shotgun and a pillowcase. As the two approached the bank's entrance, Ed pulled his mask over his face. Ed went inside, but Pelfrey, apparently experiencing cold feet, ran to the car, where Kim was waiting. Kim Lowery ridiculed Pelfrey for failing to enter the bank.

Ed returned with over $16,000 in cash, and he too chastised Pelfrey for returning to the car. Kim drove off, informing the men that they were going to her sister's house in Columbus, Ohio, in order to dispose of the

masks, shotgun, and gloves. On the way, Ed gave approximately $6000 of the stolen cash to Pelfrey. The remaining cash was kept in Kim's care. In Columbus, the three robbers gave the masks, shotgun, gloves, and clothing to Kim's sister. Kim then drove to an automobile dealership and traded in the getaway car on the purchase of a 1985 Nissan sports car. The car salesman testified that Kim was the principal negotiator of the deal; in exchange for the Nissan, the dealership received Kim's 1979 Oldsmobile and $3040.30 in cash from the bank robbery.

According to Kim, Ed Lowery forced her to participate in the bank robbery. Kim testified that she did not make masks out of pantyhose, although she did supply Ed with pantyhose on his orders. In addition, Ed assertedly pointed the shotgun at Kim and ordered her to drive. Kim testified that, when they arrived at the bank, Ed turned off the car's ignition and took the car keys, ordering Kim not to leave.

Ed Lowery and Pelfrey's testimony contradicted Kim's version. Although Ed admitted that he and Kim had exchanged blows during their relationship, the two men testified that Kim willingly participated in the bank robbery. Pelfrey testified that neither he nor Ed forced Kim to participate. Ultimately, the jury found Kim guilty of all three counts. The district court sentenced her to 57 months imprisonment for Counts 1 and 2, and another consecutive 60 months imprisonment for Count 3, for a total of 117 months imprisonment.

## II.

Kim Lowery raises five issues: (1) whether the district court clearly erred in denying Kim an acceptance of responsibility decrease under U.S.S.G. § 3E1.1; (2) whether the district court erred in imposing the imprisonment term for using and carrying a firearm during a crime of violence, § 924(c)(1), consecutive to imprisonment for Kim's other convictions; (3) whether the district court clearly erred in attributing more than $10,-

---

**1.** Ed and Kim married in June 1993; at the time of the robbery, Kim used her maiden name

Hobbs.

000 in "loss" for sentencing purposes under the sentencing guidelines; (4) whether the district court erred in holding that sufficient evidence supported Kim's conviction for using and carrying a firearm during a crime of violence, § 924(c)(1); and (5) whether the district court clearly erred in denying Kim a "minor participant" decrease under U.S.S.G. § 3B1.2(b).

■ We have carefully examined each assignment of error and conclude that each is manifestly meritless. First, the district court did not clearly err in finding that the defendant did not accept responsibility under section 3E1.1. Not only did Kim Lowery go to trial, the district court relied on credible evidence to expressly find that Kim lied about her involvement in the bank robbery.

■ Second, § 924(c)(1) expressly mandates that the district court impose the five year mandatory sentence *consecutive* to "any other term of imprisonment" "[n]otwithstanding any other provision of law." 18 U.S.C. § 924(c)(1) (1988).

■ Third, the district court did not clearly err in attributing over $10,000 in "loss" to the defendant. Under the relevant conduct provision, the loss attributable to Kim Lowery includes the acts that she "aided" and "abetted," § 1B1.3(a)(1)(A), and also includes the acts that Ed Lowery committed "in furtherance of the jointly undertaken criminal activity," § 1B1.3(a)(1)(B). Accordingly, the entire amount of the stolen cash is attributable to Kim Lowery.

■ Fourth, sufficient evidence supported the conviction on Count 3, aiding and abetting Ed Lowery in using and carrying a firearm during a crime of violence, 18 U.S.C. §§ 2, 924(c)(1). Although the defendant focuses on the alleged absence of evidence showing her *personal* possession and control of the shotgun, she was convicted for aiding and abetting Ed Lowery in using and carrying the shotgun during the bank robbery. Aiding and abetting requires that a defendant "in some sort associate himself with the venture, that he participates in it as something he wishes to bring about, and that he seek by his action to make it succeed." Thus, it has been said that aiding and abetting involves (1) an act by a defendant which contributes to the execution of a crime; and (2) the intent to aid in its commission.

*United States v. Lawson,* 872 F.2d 179, 181 (6th Cir.) (citations omitted) (quoting *United States v. Winston,* 687 F.2d 832, 834 (6th Cir.1982) (quoting *United States v. Peoni,* 100 F.2d 401, 402 (2d Cir.1938)), *cert. denied,* 493 U.S. 834, 110 S.Ct. 110, 107 L.Ed.2d 72 (1989). The jury rationally believed that Ed did not coerce Kim into committing the bank robbery. In fact, the jury rationally credited Ed's and Pelfrey's testimony, which proved that Kim took part in planning the date and target of the robbery, determined where to dispose of the masks, shotgun, and clothing, and used some of the proceeds to exchange the getaway car for another car. The evidence of Kim's intent to help commit the bank robbery, combined with her knowledge that Ed was using and carrying her shotgun, permitted the jury to rationally find that she was guilty of Count 3.

■ Finally, the district court did not clearly err in finding that the defendant was not a "minor participant" under section 3B1.2(b). The district court permissibly found that Kim Lowery "active[ly]" participated in "hatching this plot." Accordingly, Kim was not "less culpable" than Ed and Pelfrey. § 3B1.2(b), comment. (n. 3).

## III.

Pelfrey assigns two errors to the district court's acceptance of his guilty plea: (1) the district court erred under Federal Rule of Criminal Procedure 11(c)(1) by failing to inform Pelfrey of, and to ensure that Pelfrey understood, the nature of Count 3, the charge for aiding and abetting the use and carrying of a firearm during a crime of violence, § 924(c)(1); and (2) the district court erred under Rule 11(e)(2) by failing to inform the defendant that, if the district court refused the government's recommendation for a downward departure or for a sentence below the statutory minimum, Pelfrey would have no right to withdraw the plea.

Pelfrey signed a plea agreement on February 18, 1994. He agreed to plead guilty to

Counts 2 and 3; in exchange the government agreed to move for dismissal of Count 1. In addition, the government promised to move the district court to sentence Pelfrey below the sentencing guidelines, U.S.S.G. § 5K1.1, and below the mandatory minimum sentence, 18 U.S.C. § 3553(e) (1988), *if* Pelfrey provided substantial assistance. The plea agreement also explained that "[t]here is *no* agreement as to what the appropriate sentence on this plea of guilty ought to be." (Emphasis in original.)

On March 16, 1994, Pelfrey appeared in district court at his rearraignment for entry of his guilty plea. The district court satisfied itself that Pelfrey was competent and that he understood the rights waived by a guilty plea. As to the specific charges, the district court asked, "Now, do you understand the nature of the charges against you in Counts Two and Three?" and "You know what you are charged with?" Pelfrey answered yes to both questions. However, the district court did not explain the meaning of aiding and abetting liability, and the government concedes that the indictment was not read to Pelfrey. The government and the district court discussed the possible sentences and the promises in the plea agreement. Then, the Assistant United States Attorney recited a short factual basis into the record. Pelfrey acknowledged that he committed the recited acts, and the district court set a sentencing date.

On July 22, 1994, Pelfrey appeared for his sentencing hearing. Before passing final sentence, the district court invited Pelfrey to address the court if he wished to do so. Pelfrey expressed regret for the robbery, and then stated:

> On this charge with the weapon my attorney wanted me to plead. The way I understood it that was I would be pleading guilty to a conspiracy charge and aiding and abetting charge. And when I come here at my [re]arraignment, they didn't have a conspiracy charge. *I didn't understand it. So I guess what I did I signed myself guilty to  having a gun that I didn't have. I did not have a firearm, Your Honor, at any time. I just I don't understand how it was I am being charged with having a gun that I didn't have.*

(Emphasis added.) The district court asked Pelfrey's counsel whether Pelfrey wanted to withdraw the guilty plea. The defense counsel responded that he and Pelfrey spent at least thirty minutes going over the written plea agreement, and that Pelfrey knew the charges to which he was pleading. The district court responded:

> Well, I am not going to proceed with the sentencing because, you see, we have a 5K1 motion here, you see, pending. And I am not going to proceed with sentencing if he is wanting to withdraw his plea of guilty. He is either guilty or he is not guilty. And if he is not guilty, I will assign the whole thing for trial. And—or, well, I would assign it for a hearing to see whether he really wants to withdraw his plea. But I don't want to—*we are not going to have a situation where I am going to turn my cards up until he turns his.*

(Emphasis added.) The district court offered to permit Pelfrey to withdraw the plea, and the colloquy continued:

> DEFENDANT PELFREY: No, sir. *I just wanted to explain to you my situation. I didn't fully understand what—I* am not wanting—
>
> THE COURT: Either you're guilty of Count Three or you're not guilty. Now, you told me several months ago that—and you testified here that to facts that would establish your guilt as to Count Three. Now, if you don't think you are guilty, I will let you withdraw your plea, and then the Government will withdraw their motion of 5K1 treatment, and we'll assign this for trial. *You are not going to monkey with me I will tell you that right now.*
>
> DEFENDANT PELFREY: No, sir.
>
> THE COURT: Do you want to have some time to talk it over with [defense counsel]? Because I want you to really know what you are doing before we do anything.

(Emphases added.) Pelfrey finally yielded and told the district court that he did not wish to withdraw his plea, and asked court to proceed with sentencing.

On Count 2, aiding and abetting Ed Lowery in robbing the bank and in jeopardizing the life of a person by using a dangerous weapon, 18 U.S.C. §§ 2, 2113(a), (d), the district court sentenced Pelfrey to 3 months, reflecting a downward departure from the computed 63–78 months guidelines range. On Count 3, aiding and abetting Ed Lowery in using and carrying a firearm during a crime of violence, 18 U.S.C. §§ 2, 924(c)(1), the district court sentenced Pelfrey to the mandatory statutory sentence, 60 months imprisonment consecutive to the 3 months for Count 2.

### A. Rule 11(c)(1)

■ Rule 11(c)(1) provides, in relevant part:

(c) Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and *inform* the defendant of, and *determine* that the defendant understands, the following:

(1) the *nature* of the charge to which the plea is offered....

Fed.R.Crim.P. 11(c)(1) (emphases added). In *United States v. Van Buren*, 804 F.2d 888 (6th Cir.1986) (*per curiam*), we vacated a guilty plea because, *inter alia*, the district court failed to satisfy Rule 11(c)(1)'s requirements. The defendant in *Van Buren* pleaded guilty to one count of "knowingly, intentionally, and unlawfully using a communication facility to commit or facilitate a conspiracy to possess with intent to distribute and to distribute cocaine." *Id.* at 889. During the plea hearing, the district court did not explain "the nature of a conspiracy." *Id.* at 891. Instead, the district court simply "asked the prosecutor to read the indictment to the defendant and asked the defendant if there was anything further he wanted to know about the charge." *Id.* The defendant responded no, then stated a short factual basis, but made no mention of conspiracy. *Id.* at 891–92. We held that, not only was the factual basis inadequate under Rule 11(f), the district court also failed to comply with Rule 11(c)(1):

The charge of utilizing a communication facility to further a conspiracy or in the commission of a conspiracy is a complex charge that a lay person would not easily understand. To fully understand the charge against him, defendant must have understood *what it meant to be a member of a conspiracy and to act in furtherance of that conspiracy.* The District Court did not "address the defendant personally in open court and inform him of, and determine that he understands, ... the nature of the charge," in accordance with Rule 11(c)(1).

*Id.* at 892 (emphasis added). Finally, the court in *Van Buren* could not find harmless error in the case because "we don't know whether defendant understood the government had to prove a connection [between the defendant and the conspiracy]." *Id.*

In *United States v. Edgecomb*, 910 F.2d 1309 (6th Cir.1990), we limited the holding of *Van Buren*. The defendants in *Edgecomb* pleaded guilty to "conspiracy to possess cocaine with intent to distribute." *Id.* at 1310. On appeal, the defendants sought to vacate the plea because the district court purportedly "did not adequately explain the term 'conspiracy' to them." *Id.* at 1313. The court in *Edgecomb* rejected the claim, emphasizing that *Van Buren* involved a complex conspiracy charge, while the drug conspiracy in *Edgecomb* was simple.

In the instant case, the court *recited the count* of the indictment and asked both [defendants] if they understood the charge against them and if they discussed the charge with their attorneys. In addition, the government read the facts constituting the conspiracy.... [W]e believe that the conspiracy involved here, as read into the record by [the prosecutor] at the hearing, is *simple enough for a lay person to understand,* in contrast to the "use of a communication facility for the furtherance of a conspiracy" charge in *Van Buren.*

*Id.* (emphases added).

Finally, in *United States v. Syal*, 963 F.2d 900 (6th Cir.1992), the defendant went to trial, but after three days of testimony, pleaded guilty to three counts of wire fraud. Before accepting the plea, "the District Court did not rehearse the content of the

indictment or explain the separate elements of the wire fraud offense." *Id.* at 905. Although a factual basis for the plea was established, "there was no explanation of the legal significance of those acts." *Id.* The court in *Syal* held that the district court failed to comply with Rule 11(c)(1). *Id.*

When Pelfrey attempted to explain his lack of understanding of how he could be guilty of the firearm charge and implicitly sought an explanation from the court, the district judge, instead of explaining the nature of aiding and abetting a § 924(c) violation, declared that the court was not "going to turn [its] cards up until [the defendant] turns his." When Pelfrey, with remarkable persistence, repeated that he "*didn't fully understand*" the firearms charge, the court told the defendant that "[y]ou are not going to monkey with me I will tell you that right now."

We had not thought that a defendant's effort to obtain an explanation of the nature of the offense to which he agreed to plead guilty was either a card game or an effort to "monkey with" the court. Indeed, the plain language of Rule 11 expressly requires the district court to "determine that the defendant understands ... the nature of the charge to which the plea is offered."

We conclude that the district court failed to comply with Rule 11(c)(1)'s requirements and that the error did indeed affect Pelfrey's substantial rights. Similarly to the failure in *Syal,* and worse than the failure in *Van Buren,* the district court, at the rearraignment, read neither the indictment generally nor Count 3 specifically. At the sentencing hearing, even after Pelfrey expressed confusion over his connection with the shotgun, the district court still failed to read the indictment or Count 3. Thus, the district court never "address[ed] the defendant personally in open court and *inform[ed]* the defendant of ... the nature of the charge." Fed. R.Crim.P. 11(c)(1) (emphasis added).

Nor did the district court "*determine* that the defendant *understands* ... the nature of the charge." Fed.R.Crim.P. 11(c)(1) (emphases added). It is not difficult to understand that Pelfrey, a lay person, might not understand why he would be guilty of aiding and abetting the crime of "using and carry-ing" a firearm on these facts. Pelfrey did not possess a gun at all, and he did not help Ed Lowery obtain or prepare the sawed-off shotgun. It is possible that under the substantive law of aiding and abetting liability, discussed *supra,* Pelfrey was guilty of Count 3, but a lay person might not understand why, absent an explanation. Pelfrey very clearly expressed his confusion over his connection with the shotgun. The district court not only did not determine that Pelfrey understood the charge, but instead scolded him for seeking the explanation that Rule 11(c)(1) requires be given.

■ Furthermore, the error was not harmless. The government's reliance on portions of the record showing that Pelfrey knew the charge to which he was pleading guilty—aiding and abetting Ed Lowery in using and carrying a firearm during a crime of violence—does not show that the defendant *understood* the nature of the charge. Indeed, in *Van Buren,* the prosecutor read the indictment to the defendant—so the defendant knew the charge to which he pleaded guilty—but the district court still did not satisfy Rule 11(c)(1) because the court did not explain conspiracy. Here, nothing in the record shows that Pelfrey understood how the concept of "aiding and abetting" liability could encompass his conduct in Count 3. Additionally, the district court's offer to permit withdrawal of the plea did not cure the error; Pelfrey could not evaluate the offer without understanding the nature of the charge.

Finally, we vacate the judgment of conviction only on Count 3. The government gratuitously advises that logic compels us to vacate the judgment of conviction on Count 2 as well, because that count also charged an aiding and abetting offense. However, the defendant does not request such relief. We do recognize, however, that dismissal of Count 1 constituted the consideration of the negotiated plea agreement. Upon remand for repleading on Count 3, if the defendant declines to plead guilty to Count 3, or the district court refuses to accept a plea to Count 3, then the defendant may be recharged with Count 1 as well as Count 3.

*See United States v. Williams,* No. 91–1473, 1992 WL 322384, *10 (6th Cir. Nov. 5, 1992).

## B.  Rule 11(e)(2)

■ Rule 11(e)(1) authorizes the government to enter a plea agreement with the defendant in which "the attorney for the government will do any of the following:"

(A) move for dismissal of other charges; or

(B) make a recommendation, or agree not to oppose the defendant's request, for a *particular* sentence, with the understanding that such recommendation or request shall not be binding upon the court; or

(C) agree that a *specific* sentence is the appropriate disposition of the case.

(Emphases added.)  Rule 11(e)(2) adds, in relevant part: "If the agreement is of the type specified in subdivision (e)(1)(B), the court shall advise the defendant that if the court does not accept the recommendation or request the defendant nevertheless has no right to withdraw the plea."

The defendant contends that the portion of the plea agreement in which the government promised to move for a sentence below the guidelines range and below the mandatory statutory sentence was entered pursuant to Rule 11(e)(1)(B).  Thus, the defendant reasons, Rule 11(e)(2) required the district court to inform him that he had no right to withdraw the plea even if the district court did not accept the government's recommendation.

■ It is true that, although the district court informed the defendant that the court need not accept the government's recommendation, the court never told the defendant that Pelfrey could not then withdraw the plea.  However, we decline to determine whether a recommendation for a downward departure or for a sentence below the mandatory minimum is a "particular" sentence entered pursuant to (e)(1)(B), thus triggering the (e)(2) warning requirement.  The failure to give a Rule 11(e)(2) warning can be harmless error.  *United States v. DeBusk,* 976 F.2d 300, 304–06 (6th Cir.1992).  We conclude that, assuming that the district court erred by failing to give a Rule 11(e)(2) warning, that error was harmless.

The district court made clear to the defendant that he would not be able to withdraw the plea once the court pronounced sentence. We excerpt again the district court's statement at the sentencing hearing:

> Well, I am not going to proceed with the sentencing because, you see, we have a 5K1 motion here, you see, pending.  And I am not going to proceed with sentencing if he is wanting to withdraw his plea of guilty.  He is either guilty or he is not guilty.  And if he is not guilty, I will assign the whole thing for trial.  And—or, well, I would assign it for a hearing to see whether he really wants to withdraw his plea. But I don't want to—*we are not going to have a situation where I am going to turn my cards up until he turns his.*

(Emphasis added.)  This lecture by the district court informed the defendant that it "was now or never," that is, either the defendant withdraw the guilty plea before sentencing or never.  Thus, although the district court did not give such a warning at the plea hearing, if the omission was error, it was harmless error because the district court provided the warning at sentencing and offered the defendant a chance to withdraw the plea.

## IV.

We **AFFIRM** Kim Lowery's conviction and sentence, **VACATE** Joseph Pelfrey's judgment of conviction on Count 3, and **REMAND** for repleading on Count 3 and further proceedings consistent with this opinion.