978 F.2d 1260
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Gregory WILLIAMS, Defendant-Appellant.
 No. 91-1473.
 United States Court of Appeals, Sixth Circuit.
 Nov. 5, 1992.
 
 Before DAVID A. NELSON and RYAN, Circuit Judges, and FORESTER, District Judge.*
 RYAN, Circuit Judge.
 
 
 1
 Defendant Gregory Williams was convicted upon his pleas of guilty to four counts of a thirty-nine count indictment alleging various forms of mail, wire, and credit card fraud, and other federal offenses. On appeal Williams challenges the judgments of conviction entered on three of the four counts, arguing that the district court neither determined that he understood the nature of these charges nor established a factual basis for the pleas, in violation of Fed.R.Crim.P. 11(c)(1) and (f). Williams also asserts that the district court erred in denying his motion to withdraw his guilty pleas, Fed.R.Crim.P. 32(d), and in failing to ascertain whether he had the opportunity to read and discuss the presentence report with his counsel prior to sentencing. Fed.R.Crim.P. 32(a)(1)(A). Finally, Williams raises, for the first time on appeal, a claim of ineffective assistance of counsel.
 
 
 2
 We conclude that the district court failed to comply with the requirements of Rule 11 in accepting Williams' guilty plea to Count Twenty-Four of the indictment, one of the three challenged counts. We shall therefore vacate the conviction on Count Twenty-Four, vacate the sentence imposed, and remand this case for repleading on Count Twenty-Four, resentencing on that count, and whatever other appropriate proceedings are required in light of this opinion. We shall affirm the judgments of conviction on Counts Fifteen and Thirty-Six of the indictment.
 
 I.
 
 3
 Williams was indicted on a host of fraud charges involving a continuing scheme to defraud investors of over $1 million through his operation of United Fidelity Financial Services, Inc. and other financial services companies. According to the general allegations of paragraphs one through ten of the indictment, defendant owed his primary victim, Gloria McKay, and her family approximately $265,000 as the result of an earlier fraudulent scheme involving precious metals and other investments. Williams told McKay that he would repay the money he owed her, but that in order to generate the funds to do so he would need capital to establish and operate a business. In an effort to string McKay along, Williams mailed letters and made phone calls to her claiming that United Fidelity would soon generate large profits and representing that he would soon repay McKay all the money he owed her.
 
 
 4
 As part of his broader fraudulent scheme, Williams used credit gained through the use of false income statements, employment history, and social security numbers to defraud others, and obtained additional funds through advertisements in financial newspapers and magazines promising customers access to capital and quick financing for their ventures in return for advances of substantial sums of money. The scheme lasted from 1985 to 1989, and when it collapsed, Williams was indicted and brought to trial.
 
 
 5
 After four days of trial consisting largely of the testimony of government witnesses, Williams, allegedly depressed over his attorney's incompetence, attempted suicide by ingesting numerous Tylenol capsules. Several days later, Williams agreed to plead guilty to four counts in the indictment in exchange for dismissal of all other charges and a maximum sentence of incarceration for 15 years.
 
 
 6
 Eleven weeks after entering his guilty plea, and before sentencing, Williams filed a pro se motion to withdraw his guilty plea, claiming innocence and seeking the appointment of Saul Levin, an attorney then representing him in a probation violation case in another court, as counsel in this case. A formal motion to permit Williams to withdraw his plea was later entered by Levin. Following a hearing, the district court denied the motion.
 
 
 7
 A judgment and commitment order was entered on the four counts to which Williams pleaded guilty. He was sentenced to imprisonment terms of 60 months on Counts One and Twenty-Four, 168 months on Count Fifteen, and 10 years on Count Thirty-Six, to be served concurrently with each other and with a probation violation sentence pending in another court, and to supervised release for a period of three years upon release from imprisonment.
 
 
 8
 Williams concedes that his guilty plea and conviction on Count One, making false statements to a probation officer, 18 U.S.C. § 1001, was proper. He attacks the judgments of conviction based on his guilty pleas to Counts Fifteen, Twenty-Four, and Thirty-Six, however, arguing that the district court failed to establish an adequate factual basis before accepting the pleas and that the pleas were offered with an inadequate understanding of the charges and were therefore involuntary.
 
 II.
 
 9
 Fed.R.Crim.P. 11 sets forth procedures to ensure that guilty pleas are knowingly and voluntarily made and requires the court to develop a record "demonstrating ... that the guilty plea was voluntarily entered with an understanding of the charge." McCarthy v. United States, 394 U.S. 459, 469 (1969). Rule 11(c)(1) requires the district court, prior to accepting a guilty plea, to "address the defendant personally in open court and inform the defendant of, and determine that the defendant understands ... the nature of the charge to which the plea is offered...." Fed.R.Crim.P. 11(c)(1). Rule 11(f) provides that "[n]otwithstanding the acceptance of a plea of guilty, the court should not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea." Fed.R.Crim.P. 11(f). With these requirements in mind, we shall address the issues raised by Williams in challenging his convictions on Counts Fifteen, Twenty-Four, and Thirty-Six.
 
 A.
 
 10
 Count Fifteen charged Williams with credit card fraud. 18 U.S.C. § 1029(a)(2). Section 1029(a)(2) makes it unlawful to "knowingly and with intent to defraud ... use[ ] one or more unauthorized access devices during any one-year period, and by such conduct obtains anything of value aggregating $1,000 or more during that period...." 18 U.S.C. § 1029(a)(2). An "unauthorized access device" is defined as "any access device that is lost, stolen, expired, revoked, canceled, or obtained with intent to defraud...." 18 U.S.C. § 1029(e)(3).
 
 
 11
 Williams contends that the record of the plea hearing lacks any admission or other proof of an intent to defraud in obtaining credit, and that the district court thus failed to establish a sufficient factual basis on the record for this count, or to determine that Williams properly understood the charge. The government responds that the admissions offered by Williams reveal an adequate factual basis for the guilty plea and demonstrate that Williams understood the essence of the offense.
 
 In relevant part, the transcript states:
 
 12
 THE COURT: Now, as to Count 15.
 
 
 13
 Count 15 repeats, of course, the first ten paragraphs in the general allegations. Count 15 states that from on or about October 9th, until on or about October 8th, 1987, to October 1987, 1988, a year's period of time in this district, that you knowingly and with intent to defraud used unauthorized access devices with intent to defraud, and you caused to be obtained goods, money and services with an aggregate value greater than a thousand dollars.
 
 
 14
 How do you plead to that count, which is Count 15?
 
 
 15
 THE DEFENDANT: I plead guilty, your Honor.
 
 
 16
 THE COURT: Tell me in your own words, Mr. Williams, what it was that you did that you knew was a violation of the law in Count 15.
 
 
 17
 THE DEFENDANT: Knowingly and willingly switching around numbers of my social security, your Honor, to obtain property.
 
 
 18
 THE COURT: Oversimplified.
 
 
 19
 We call that credit card fraud?
 
 
 20
 THE DEFENDANT: Yes, sir.
 
 
 21
 THE COURT: You understand that?
 
 
 22
 THE DEFENDANT: Yes, your Honor.
 
 
 23
 We agree with the government that an adequate factual basis was established for Count Fifteen by Williams' acknowledgement that he used false social security numbers in order to obtain property. In United States v. Alston, 609 F.2d 531 (D.C.Cir.1979), cert. denied, 445 U.S. 918 (1980), the court held that where "relevant documents contained material misrepresentations designed to induce an extension of credit that would not otherwise be made, [one] could reasonably infer an intent to defraud." Id. at 538. Williams makes no showing that this is not a correct statement of the law, and its result makes sense when applied to this case. At the Rule 11 hearing, Williams admitted knowingly "switching around" social security numbers and submitting false information to lenders for the purpose of obtaining credit. Manifestly, he understood that the numbers were incorrect at the time he submitted them "to obtain property." These admissions were sufficient to infer an intent to defraud and they provide an adequate factual basis to support conviction for credit card fraud as charged in Count Fifteen.
 
 B.
 
 24
 Williams next asserts that his conviction on Count Twenty-Four, one of several consecutive counts of mail fraud, 18 U.S.C. § 1341, was legally deficient because during the Rule 11 proceeding he was asked about, and admitted, an offense charged in a different count. Alternatively, he asserts that the record lacks any proof of a scheme to defraud.
 
 
 25
 Count Twenty-Four charged that Williams caused a $10,000 check to be mailed by Joseph Dinunzio to defendant's United Fidelity Financial Services, Inc. on April 12, 1988. The relevant portion of the plea colloquy, however, recites facts relating to Count Twenty-Five, a separate and distinct mail fraud count involving a different victim on a different occasion. The transcript reads as follows:
 
 
 26
 THE COURT: And then we go to Count 24. And Count 24 reincorporates the general allegations of the opening paragraphs of one through 10 of the second superseding indictment, and it charges a so-called mail fraud count. And what was it that you did in Count 24 that you know was a violation of the law, Mr. Williams?
 
 
 27
 THE DEFENDANT: I doin't [sic] understand what the count says.
 
 
 28
 THE COURT: Well, it charges that on or about dates listed in each count below, ... the defendant Gregory Williams, for purposes of executing and carrying out the scheme described above, knowingly placed and caused to be placed ... and knowingly caused to be delivered by the United States Postal Service items listed in each count below, all in violation of the statute in such case made and provided.
 
 
 29
 And Count 24, the mailer was Jay Foster. The recipient, the United Fidelity Financial Services, Inc. It was a check in the amount of $10,000.00. The date of the mailing was April 21, 1988. Does that ring a bell?
 
 
 30
 THE DEFENDANT: Yes, sir, your Honor. Jay Foster was a client that United Fidelity Company, which I operated, received payment for services that he did not receive, your Honor.
 
 
 31
 THE COURT: And you knew that was a violation of the law?
 
 
 32
 THE DEFENDANT: Yes, sir, your Honor.
 
 
 33
 (Emphasis added.)
 
 
 34
 The government contends that Counts Twenty-Four and Twenty-Five are for all practical purposes "fungible" because the mailings at issue were part of the same underlying scheme, involved the same dollar amounts, and took place within nine days of one another. According to the government, these facts demonstrate that any error committed by the district court was harmless, amounting to a simple variance in proofs that did not affect Williams' substantial rights. Fed.R.Crim.P. 11(h).
 
 
 35
 We do not agree that the conviction on Count Twenty-Four, based on a factual record and admissions relating to Count Twenty-Five, was harmless error. The simple fact is that Counts Twenty-Four and Twenty-Five charged two distinct crimes, involving different victims and different mailings at different times. This court may not reasonably conclude that Williams' admission to the facts essential to the offense set forth in Count Twenty-Five are the legal equivalent of an admission to the very different essential facts constituting the charges contained in Count Twenty-Four. For this reason, we also cannot conclude that the district court's error was harmless.
 
 
 36
 Rule 11 "is intended to produce a complete record at the time the plea is entered of the [relevant] factors...." McCarthy, 394 U.S. at 465 (emphasis added). "[T]he more meticulously the Rule is adhered to, the more it tends to discourage, or at least to enable more expeditious disposition of, ... attacks on the ... validity of guilty pleas." Id. In this case, there is no evidence in the transcript of the Rule 11 proceedings relating to a mailing or a fraudulent scheme involving Joseph Dinunzio. Under these circumstances, the district court could not have properly satisfied itself that Williams understood the charge to which he was pleading guilty or that a sufficient factual basis existed for his guilty plea to Count Twenty-Four.
 
 
 37
 This court may not assume that Williams defrauded Joseph Dinunzio, nor can we adequately discern whether Williams would have knowingly and voluntarily admitted to having done so had the facts relevant to Count Twenty-Four been properly presented to him at the plea hearing. In the absence of a proper record establishing that the plea of guilty to the mail fraud charges contained in Count Twenty-Four was both knowing and supported by a sufficient factual basis, we must vacate the judgment of conviction entered on this count and remand the matter to the district court for repleading. See United States v. Goldberg, 862 F.2d 101, 106-08 (6th Cir.1988). For this reason, we need not reach Williams' alternative argument that there was no factual basis in the record to support the existence of a scheme to defraud.
 
 C.
 
 38
 Count Thirty-Six is one of seven counts alleging that Williams
 
 
 39
 knowingly and willfully caused and procured the engaging and attempting to engage in a monetary transaction, in criminally derived property, of a value greater than $10,000, which property was derived from wire fraud, that is, he caused the transfer, deposit and attempted deposit of funds and monetary instruments derived from wire fraud, in and affecting commerce, to a financial institution, all in violation of Title 18, United States Code, Section 1957.
 
 
 40
 As set forth in the indictment, Count Thirty-Six essentially tracks the language of 18 U.S.C. § 1957(a) which makes it unlawful "to engage in a monetary transaction in ... property ... derived from specified unlawful activity...." A "monetary transaction" includes any "deposit, withdrawal, transfer, or exchange, in or affecting interstate or foreign commerce, of funds ... by, through, or to a financial institution...." 18 U.S.C. § 1957(f)(1). The "specified unlawful activity" underlying the illegal monetary transaction charged in Count Thirty-Six is wire fraud, 18 U.S.C. § 1343, specifically, an $80,000 wire transfer from Gloria McKay on October 5, 1988.
 
 
 41
 There are two elements required to establish wire fraud: "(1) a scheme to defraud; and (2) use of wire communications in furtherance of the scheme." United States v. Ames Sintering Co., 927 F.2d 232, 234 (6th Cir.1990). Williams argues that the district court failed to determine that his guilty plea to Count Thirty-Six was based on an "understand[ing] [of] the nature of the charge" contained in the count, Fed.R.Crim.P. 11(c)(1), and also that there was an insufficient factual basis to establish a scheme to defraud. Fed.R.Crim.P. 11(f). Williams bases these related assignments of error on his assertion that at the Rule 11 proceeding he admitted only receiving money based on a premise that never materialized--that he would pay back the money when the business became profitable--rather than admitting that he had obtained the money by means of false statements knowingly made. He asserts that in the absence of any facts developed in the plea hearing to support the existence of an intent or scheme to defraud, the conviction for engaging in a monetary transaction in property derived from illegal activity, stated in Count Thirty-Six and based on the underlying offense of wire fraud, must be vacated.
 
 
 42
 In the relevant portions of the Rule 11 plea hearing transcript, the court recited the indictment language and then continued:
 
 
 43
 THE COURT: ...
 
 
 44
 And then, the specifics of Count 36 are that approximate date of transaction was October 5, 1988. The value of the property was $80,000.00, and it was a wire transfer; and the source of that property was Gloria McKay. Does that ring a bell?
 
 
 45
 THE DEFENDANT: Yes, your Honor.
 
 
 46
 THE COURT: Tell me in your own words what it was you did in that regard that you know was a violation of the law.
 
 
 47
 THE DEFENDANT: Ms. McKay sent money to our company to operate upon my request with knowledge that she was going to receive it back due to the business we had coming in, when in fact no such business came in, sir.
 
 
 48
 THE COURT: And you knew it was a violation of the law as well?
 
 
 49
 THE DEFENDANT: Yes, sir, your Honor.
 
 
 50
 The government supplemented the record by adding that it was prepared to establish that the bank involved was federally insured. The government also asked for some clarification of the record to establish that defendant had admitted using false statements to obtain property:
 
 
 51
 [The Assistant U.S. Attorney]: ...
 
 
 52
 One other matter, your Honor. Mr. Williams has indicated, has agreed with the factual statements that are alleged in the indictment. I am a little unclear at this point whether he has acknowledged with respect to the credit [card] fraud, the mail fraud and Count 36, that he has acknowledged that he obtained that money by making false statements. I wanted to make sure the record is clear.
 
 
 53
 THE COURT: You did acknowledge that, did you not, Mr. Williams?
 
 
 54
 THE DEFENDANT: Yes, sir, your Honor.
 
 
 55
 [The Assistant U.S. Attorney]: I am satisfied.
 
 
 56
 We think the defendant's responses to the court's questions, as augmented by the Assistant United States Attorney's prompting, established a basis for the district court, and this court, to conclude that Williams understood that he was pleading guilty to the scheme to defraud McKay that was alleged in Count Thirty-Six of the indictment, and that he was doing so voluntarily.
 
 
 57
 The plea was offered after nearly four days of trial in which extensive evidence was introduced concerning the fashion in which Williams carried out his fraudulent scheme to obtain funds from McKay as alleged in Count Thirty-Six. Nowhere during the course of the four days of trial or during the plea proceedings did Williams or his attorney express any lack of understanding of the allegations of Count Thirty-Six, seek any clarification of the meaning of the charge, or indicate by questions to the court or otherwise, any suggestion that the proffered plea of guilty was not entirely knowing and voluntary.
 
 
 58
 Williams also claims that his guilty plea to Count Thirty-Six should be set aside because the district court failed to establish a factual basis for the plea as required by Fed.R.Crim.P. 11(f). The rule states:
 
 
 59
 (f) Determining Accuracy of Plea. Notwithstanding the acceptance of a plea of guilty, the court should not enter a judgment upon such plea without making such inquiry as shall satisfy it that there is a factual basis for the plea.
 
 
 60
 The record of the plea proceeding alone does not establish an adequate factual basis for the offense charged in Count Thirty-Six. The most that can be derived from the colloquy between the court, the Assistant United States Attorney, and the defendant is that Williams acknowledged that McKay sent him money at his request believing that "she was going to receive it back due to the business we had coming in" but that "no such business came in ..."; that Williams knew that what he had done "was a violation of the law"; and that he obtained the money from McKay "by making false statements." Standing alone, that information would not provide a sufficient factual basis for the plea to the charge in Count Thirty-Six. But Williams' description at the plea proceeding of his conduct in defrauding McKay does not stand alone. As we have said, the plea was offered after four days of trial in which extensive evidence of Williams' fraudulent conduct was introduced. That evidence includes a stipulation in which Williams acknowledged:
 
 
 61
 The records that are contained in Government Exhibit (C)(1) show transfers by wire of the dollar amount indicated on each transfer from Gloria McKay in Minneapolis, Minnesota, to the account of United Fidelity Financial Services, Inc., at Franklin Savings Bank in Birmingham, Michigan. In addition, the transfer took place on the date that is indicated on each transfer document.
 
 
 62
 Exhibit (C)(1)q shows a wire transfer of $80,000 to United Fidelity by McKay on October 5, 1988, and McKay testified that the transfer was made under circumstances tending to show that Williams' intent was to defraud her the money. The trial record also included a letter from Williams to McKay in which Williams solicited "another $80,000 to maintain our company" on the representation that if McKay would help "keep our doors open and our phones on" by advancing the requested $80,000.00, she would receive upwards of $950,000 "by the 1st of the year." That evidence, together with Williams' acknowledgements at the plea proceeding that he obtained the money described in Count Thirty-Six by "false statements," provided a factual basis for the plea sufficient to meet the requirements of Rule 11(f).
 
 
 63
 Williams argues, however, that it is improper for the trial court or this court to look outside the record of the plea proceedings for the factual basis required by Rule 11(f), citing Goldberg, 862 F.2d 101. We disagree. While it is true that the Goldberg court stated that "[w]e are limited in our review to the record of the plea proceeding," id. at 105, the case did not involve a guilty plea offered during trial in which an extensive record was developed before the trial judge, establishing a factual basis for the latecoming plea. Indeed in Goldberg, the court went on to state that "[w]e recognize that the district court may determine the existence of the Rule 11(f) factual basis from a number of sources...." Id.
 
 
 64
 We are satisfied that in the unusual case where a plea of guilty is offered mid-trial, the district court is justified in considering the trial record together with information provided to the court during the separate plea proceeding in determining, in compliance with Rule 11, whether the accused understands the nature of the offense to which he or she is pleading and is doing so voluntarily, and whether there is a factual basis for the plea. District courts will have no trouble recognizing that a defendant's understanding of the charges to which the plea of guilty is offered and the voluntariness of the plea are entirely subjective matters, whereas the factual basis for the plea is entirely objective. Consequently, information extraneous to the defendant's personal acknowledgements during the plea proceeding ordinarily is less reliable as an indicator of the accused's understanding of the plea than an indicator of a factual basis for it. In this case, however, Williams acknowledged that he obtained money from McKay, under circumstances he knew were a violation of the law, and that he did so through false statements to her. That, coupled with his counseled desire to plead guilty after hearing four days of evidence about his fraudulent practices including those alleged in Count Thirty-Six, provided the district court with an entirely sufficient basis to conclude that Williams offered his guilty plea knowingly, understandingly, and voluntarily. Williams' statements, the statements of the Assistant United States Attorney, and the evidence produced during the aborted trial provided the court with an abundance of evidence that there was a factual basis for the plea.
 
 
 65
 We conclude therefore that the judgment of conviction upon Williams' plea of guilty to Count Thirty-Six must be AFFIRMED.
 
 III.
 
 66
 Williams also assigns error to the district court's denial of his motion to withdraw his guilty plea. Fed.R.Crim.P. 32(d). Rule 32(d) provides that "the court may permit withdrawal of the plea upon a showing by the defendant of any fair and just reason." This issue is moot as to Count Twenty-Four, but some analysis is necessary concerning Williams' request to withdraw his guilty plea to Counts Fifteen and Thirty-Six.
 
 
 67
 Plea withdrawal is not an absolute right, but a matter within the broad discretion of the district court. Goldberg, 862 F.2d at 103. This court has identified a number of factors to guide our determination whether a defendant has established a "fair and just reason" to withdraw his plea:
 
 
 68
 (1) whether the movant asserted a defense or whether he has consistently maintained his innocence;
 
 
 69
 (2) the length of time between the entry of the plea and the motion to withdraw;
 
 
 70
 (3) why the grounds for withdrawal were not presented to the court at an earlier time;
 
 
 71
 (4) the circumstances underlying the entry of the plea of guilty, the nature and the background of a defendant and whether he has admitted his guilt; and
 
 
 72
 (5) potential prejudice to the government if the motion to withdraw is granted.
 
 
 73
 Id. at 103-04. The movant retains at all times the burden of establishing that his motion to withdraw a plea should be granted. United States v. Triplett, 828 F.2d 1195, 1197 (6th Cir.1987).
 
 
 74
 Williams concedes that the district court analyzed the motion according to the proper legal standards, but disputes the conclusions the court reached. Specifically, he claims that he has consistently maintained his innocence; that he sought to withdraw his guilty plea as soon as practicable under the circumstances; and that the government's showing of prejudice was not so great as to outweigh the prejudice to himself. Williams also alludes repeatedly to the ineffective assistance of trial counsel in the plea proceedings.
 
 
 75
 We conclude that the district court properly, and within its discretion, denied defendant's Rule 32(d) motion to withdraw his plea. Our review of the record reveals that Williams has not consistently maintained his innocence on all charges. Indeed, his guilty pleas to Counts Fifteen and Thirty-Six establish a voluntary and knowing admission to credit card fraud and wire fraud, and Williams readily concedes lying to his probation officer concerning the basis for his conviction on Count One. There is also no evidence that the motion to withdraw his pleas was the result of a "swift change of heart" following the guilty pleas, a particularly strong element in determining the propriety of withdrawal. United States v. Spencer, 836 F.2d 236, 238-39 (6th Cir.1987). While Williams argues that he was ill-served by incompetent counsel and that his stay in a psychiatric ward should excuse his delay in moving for withdrawal, we think these are factual matters best left for the district court and we find no clear error in its determinations on these questions. Next, we think the prejudice to the government, if withdrawal of the plea were allowed, while not determinative, is patent. The government brought to trial and was prosecuting an extremely complex thirty-nine count criminal fraud case when Williams' purported suicide attempt halted the proceedings and the guilty pleas to four of the counts were entered. The substantial cost to the government and to the interests of justice in restarting the entire prosecutorial process is obvious and was properly considered by the district court. Finally, the issues concerning the alleged ineffective assistance of counsel raised in Williams' initial pro se motion to withdraw his guilty plea are not properly before us at this time. See United States v. Van Buren, 804 F.2d 888, 891 (6th Cir.1986).
 
 
 76
 In light of all these factors, we conclude that the district court did not abuse its discretion in denying Williams' Rule 32(d) motion to withdraw his guilty plea.
 
 IV.
 
 77
 Williams next claims that the district court failed to "determine that the defendant and defendant's counsel have had the opportunity to read and discuss the presentence investigation report [PSI] ... or summary thereof" before imposing sentence. Fed.R.Crim.P. 32(a)(1)(A). Williams argues that if the proper procedures had been followed, he would have contested the two-point enhancement in his offense level to account for the involvement of a vulnerable victim, U.S.S.G. § 3A1.1, and the four-point upward adjustment to account for his role in the offense. U.S.S.G. § 3B1.1(a).
 
 
 78
 If the procedures established by Rule 32(a)(1)(A) are not followed by the sentencing court, the usual remedy is to remand the case for resentencing. United States v. Schultz, 855 F.2d 1217, 1224 (6th Cir.1988). This court has not, however, required that district courts affirmatively inquire whether a defendant has had the opportunity to read and discuss a PSI with counsel. See, e.g., United States v. Rone, 743 F.2d 1169, 1175 (7th Cir.1984). Instead, we have held that in order to determine on appeal whether the district court has complied with Rule 32(a)(1)(A), "the court need only somehow determine that defendant and counsel have had an opportunity to read and discuss the PSI." United States v. Stevens, 851 F.2d 140, 143 (6th Cir.1988).
 
 
 79
 The government does not maintain that the district court made the determination at sentencing required by Rule 32(a)(1)(A), but instead offers three sources of information to support its claim that the district court could have determined that Williams and his counsel had the opportunity to read and discuss the PSI. First, the government relies on an assertion by government attorneys in a brief opposing Williams' motion to withdraw his guilty plea that defense counsel told them that Williams was seeking to be released from the plea agreement because the applicable guideline range for his offenses, according to calculations contained in the PSI, was below the 15-year maximum sentence to which he had previously agreed. This "evidence" allegedly establishes that Williams and defense counsel read the PSI and had the opportunity to discuss its implications. Second, the government relies on a letter from a psychologist to the district court stating that the psychologist had received a copy of the PSI from defense counsel for use in preparing a report on Williams and that he had discussed the PSI with Williams in preparing the report. Finally, the government points out that a certification included with the PSI stated that the report had been provided to Williams and his defense counsel, as well as to the government attorneys.
 
 
 80
 We find none of these sources particularly helpful to our determination. The issue is whether the district court "somehow" made a determination concerning whether counsel had the opportunity to read and discuss the PSI with the defendant. The only information tending to prove the disputed point is the statement of government attorneys that defense counsel told them that he and Williams had discussed the report and, after determining that the plea agreement previously entered into now appeared disadvantageous, decided to seek withdrawal of the guilty pleas. We think this unsubstantiated statement of an adversarial party in a brief unrelated to sentencing is insufficient, however, to support the conclusion that the district court made the determination required by Rule 32(a)(1)(A).
 
 
 81
 In addition to remanding for repleading on Count Twenty-Four, we shall also remand for resentencing on all four of the counts of conviction.
 
 V.
 
 82
 Finally, Williams asks us to vacate his convictions and remand this case for trial because he was denied the effective assistance of counsel before the district court. This matter has not been addressed to the district court. Ineffective assistance of counsel claims are not normally considered for the first time on direct appeal. United States v. Gonzales, 929 F.2d 213, 215 (6th Cir.1991). We therefore decline to consider the merits of this issue. The issues raised by Williams require factual determinations best left to the district court's determination. We cannot review these matters without the benefit of additional evidence and a better developed record. The proper procedure for raising claims in this situation is to file a motion in the district court under 28 U.S.C. § 2255. United States v. Castro, 908 F.2d 85, 89 (6th Cir.1990).
 
 VI.
 
 83
 The judgments of conviction on Counts Fifteen and Thirty-Six are AFFIRMED. The guilty plea on Count Twenty-Four is not shown on the record to have been knowingly and understandingly offered, as required by Fed.R.Crim.P. 11(c)(1), and was accepted by the district court without a sufficient factual basis, in violation of Fed.R.Crim.P. 11(f). Consequently, the judgment of conviction on County Twenty-Four is VACATED.
 
 
 84
 The district court also erred by failing to determine whether defendant and defense counsel had the opportunity to read and discuss the presentence report prior to sentencing as required by Fed.R.Crim.P. 32(a)(1)(A). Therefore, all of the sentences are VACATED.
 
 
 85
 The case is REMANDED to the district court to afford the defendant the opportunity to plead anew to the offense alleged in Count Twenty-Four and for resentencing according to the terms of the plea bargain originally negotiated. In the event the defendant declines to offer a plea of guilty to County Twenty-Four, or, if offered, such plea is not accepted by the court, the defendant may be recharged with all of the counts of the original indictment save Counts One, Fifteen, and Thirty-Six.
 
 
 
 *
 The Honorable Karl S. Forester, United States District Judge for the Eastern District of Kentucky, sitting by designation