# United States Court of Appeals

### For the Eighth Circuit

_____

No. 11-3399

_____

United States of America

*Plaintiff - Appellee*

v.

Anthony Akiti

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota - St. Paul

_____

Submitted: October 17, 2012
Filed: December 20, 2012

_____

Before MURPHY, BYE, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

A jury found Anthony Akiti guilty of one count of aiding and abetting the armed robbery of a credit union in violation of 18 U.S.C. §§ 2113(a) and (d), and one count of obstruction of justice in violation of 18 U.S.C. § 1512(c)(1). The district

court[1] sentenced him to 97 months imprisonment with five years of supervised release and ordered him to pay $17,078.51 in restitution and a $200 special assessment. Through counsel, Akiti filed a brief challenging the sufficiency of the evidence on both counts. Akiti also filed a pro se brief challenging the sufficiency of the evidence and raising numerous additional challenges. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

I.

Anthony Akiti and Chop Nguot Tang each were indicted on one count of armed credit-union robbery in connection with the December 16, 2010, armed robbery of the Affinity Plus Federal Credit Union ("APFCU") in the student union building on the campus of Minnesota State University ("MSU") in Mankato, Minnesota. Akiti also was indicted on one related count of obstruction of justice. Tang pled guilty to the armed robbery charge, but Akiti pled not guilty and proceeded to trial.

At trial, the government presented evidence that Akiti was a customer of APFCU and went there approximately once a week, including the day before the robbery. On the afternoon of the robbery, Tang and Akiti spent time together at Akiti's apartment. Tang left the apartment around 4 p.m., and Akiti left shortly thereafter. Akiti's apartment was approximately one mile from MSU's campus.

At 4:09 p.m., security cameras recorded a white Cadillac with a tan top enter the MSU campus. The vehicle drove past the student union twice and then left campus approximately four minutes later. The government presented evidence that Akiti owns a Cadillac matching the description of the vehicle in the surveillance video.

---

[1]The Honorable Patrick J. Schiltz, United States District Judge for the District of Minnesota.

Security footage presented at trial showed that at approximately 4:23 p.m., Tang entered the APFCU, pulled out a gun, and demanded the tellers give him the cash from their drawers. He left the credit union less than a minute later with over $17,000 in cash and ran about a mile towards an apartment complex on Ahlstrom Road. A witness in the apartment complex saw a white Cadillac, which had been sitting in the complex's parking lot for about eight minutes, pick up Tang and drive away.

A witness testified that Tang arrived at a relative's house wearing the clothing he wore during the robbery. Akiti entered the home a couple minutes later. Akiti and Tang went to the basement, where Tang changed clothes, and the two men left shortly afterwards. The government presented evidence that the day after the robbery, Akiti made a cash purchase at Best Buy. Law enforcement officers later recovered from Best Buy two $20 "bait bills" that had been stolen from APFCU. Akiti was one of only two people who made cash purchases at that particular Best Buy register that morning. Authorities arrested Akiti later that day.

The government also presented recorded phone conversations showing that on December 26, 2010, while Akiti was in jail, he called his wife three times and told her to find something near the heater in his apartment. He alternately told her that she was looking for a "red shirt," a "white shirt," a "key," and "incense," expressing anger and concern when she initially could not find anything. When she told him she found the "key," Akiti asked, "All of it? . . . So you know what's up right?" Then he repeatedly told her to "do laundry," asking several times if she understood what he meant and insulting her when she seemed confused. Akiti warned her, "Don't get setup like I got setup, remember, I got setup from Best Buy." When Akiti and his wife spoke again later that day, she referred to a lighter and told Akiti, "I used that. And I just torn all of it, and I just ah, just got rid of those shirts that you don't want anymore."

After the government rested its case, Akiti moved for a judgment of acquittal on both counts.  The district court denied his motion.[2]  Akiti did not present any witnesses, so the district court submitted the case to the jury, which found him guilty both of aiding and abetting an armed credit-union robbery and of obstruction of justice.  Akiti now appeals.

II.

We review a district court's denial of a motion for judgment of acquittal de novo.  United States v. Johnson, 639 F.3d 433, 437 (8th Cir. 2011).  Under this standard, "[w]e review the evidence in the light most favorable to the government, resolving evidentiary conflicts in favor of the government, and accepting all reasonable inferences drawn from the evidence that support the jury's verdict." United States v. Bell, 477 F.3d 607, 613 (8th Cir. 2007) (internal quotation marks omitted).  "The evidence need not exclude every reasonable hypothesis of innocence, and we may not disturb the conviction if the evidence rationally supports two conflicting hypotheses." United States v. Anderson, 78 F.3d 420, 422 (8th Cir. 1996). We will reverse a conviction "only if no reasonable jury could have found [the defendant] guilty beyond a reasonable doubt."  Bell, 477 F.3d at 613.  Moreover, either "[d]irect or circumstantial evidence can provide the basis for a conviction." United States v. Wesseh, 531 F.3d 633, 636 (8th Cir. 2008).

A.

Akiti first argues the evidence was insufficient to convict him of aiding and abetting armed credit-union robbery under 18 U.S.C. §§ 2113(a) and (d).  Akiti

---

[2]The district court denied Akiti's motion with respect to the armed robbery charge before submitting the case to the jury.  With respect to the obstruction of justice charge, the district court initially reserved judgment and then denied the motion after the jury returned its guilty verdict.

concedes the evidence was sufficient to show Tang committed armed credit-union robbery, but he contends the evidence was insufficient to show he aided and abetted Tang. Akiti further argues that even if the evidence was sufficient to prove he aided and abetted Tang in a credit-union robbery under section 2113(a), the evidence was not sufficient to show he knew Tang was armed as required to convict him under section 2113(d). We hold the evidence was sufficient to convict Tang of armed credit-union robbery under sections 2113(a) and (d).

To be guilty of armed credit-union robbery under an aiding-and-abetting theory, the defendant must "[1], have known that an armed credit-union robbery was being committed or going to be committed; and [2], have knowingly acted in some way for the purpose of aiding the armed credit-union robbery." Jury Instruction No. 15. Viewed in the light most favorable to the government, the evidence shows that Akiti and Tang met at Akiti's apartment the day of the robbery and that Akiti drove Tang to the MSU campus, dropped him off, and then waited for him at the Ahlstrom Road apartment complex. The evidence shows that Akiti picked up Tang as Tang was running toward the apartment complex after the robbery and then drove Tang to a relative's house to change clothes. Based on Akiti's use of the bait bills at Best Buy and his conversations with his wife while in prison, a reasonable jury could have inferred that at some point during the evening, Akiti and Tang split the money from the robbery. Because the evidence shows that Akiti met with Tang before the robbery, drove him to and from the robbery, and split the money from the robbery, a reasonable jury also could have concluded beyond a reasonable doubt that Akiti knew a credit-union robbery was being committed and knowingly acted in some way for the purpose of aiding the robbery.

Whether the evidence is sufficient to show Akiti knew Tang would be armed is a closer question. However, we must view the evidence in the light most favorable to the government, Bell, 477 F.3d at 613, and "[w]here a reasonable-minded jury could have found evidence sufficient to convict, we will not disturb the verdict just

because a different jury might have reached a different conclusion," United States v. Peters, 462 F.3d 953, 958-59 (8th Cir. 2006). Here, the evidence shows that Akiti was a regular customer of APFCU and visited the branch the day before the robbery. Along with the evidence discussed above, and viewed in the light most favorable to the government, a reasonable jury could have inferred that Akiti was very familiar with the APFCU and played a major role in planning the robbery. Moreover, this plan involved robbing a bank during business hours with multiple bank employees present. Because the evidence shows that Akiti was intimately involved with planning and executing the robbery, and because Akiti and Tang were together in Akiti's apartment immediately before the robbery, a reasonable jury could have concluded Akiti knew Tang would be armed during the robbery. See United States v. Spinney, 65 F.3d 231, 237 (1st Cir. 1995) (holding evidence sufficient to show aider-and-abetter defendant knew principal would be armed when defendant helped plan bank robbery and "scheme called for a lone robber to enter a bank during business hours with the intent of looting it"); United States v. Weaver, 565 F.2d 129, 136-37 (8th Cir. 1977) (affirming defendant's conviction of aiding and abetting armed robbery when evidence showed defendant was closely involved with principal both before and after robbery). Therefore, we affirm Akiti's armed credit-union robbery conviction.

B.

Akiti next argues the evidence was insufficient for the jury to convict him of obstruction of justice under 18 U.S.C. § 1512(c)(1). He asserts that because he referred to shirts, keys, and incense during the three conversations with his wife, and because a federal agent testified at trial that he did not know exactly what Akiti and his wife were talking about, no evidence showed he intended his wife to do anything illegal. We hold the evidence was sufficient to support his conviction.

To convict Akiti of obstruction of justice, the jury had to find that Akiti (1) "willfully caused [his wife] to destroy or conceal United States currency," (2) "acted with the intent to impair the currency's availability for use in an official proceeding," and (3) acted "with the purpose of wrongfully impeding the due administration of justice." Jury Instruction No. 22. During the three recorded phone conversations with his wife, Akiti vacillated between asking his wife to find a "red shirt," a "white shirt," a "key," and "incense." He repeatedly asked her whether she understood what he meant, expressed anger when she seemed confused or could not find anything, told her to "do laundry," and warned her not to "get setup like I got setup . . . from Best Buy." In the final phone conversation, Akiti's wife told him she used a lighter to "g[e]t rid of those shirts that you don't want anymore." Although the calls are cryptic, a reasonable jury could have concluded Akiti was directing his wife to destroy currency from the robbery in order to prevent the government from using the currency as evidence against him in the robbery prosecution. Cf. United States v. Adipietro, 983 F.2d 1468, 1479 (8th Cir. 1993) (holding district court did not clearly err in applying obstruction-of-justice sentencing enhancement based on "the nature of what [the defendant] said in his jailhouse communications, his tone of voice in saying it, and the roundabout way he said it" (internal footnote omitted)).

III.

In addition to the sufficiency of the evidence challenge that Akiti raised both through counsel and pro se, Akiti raised numerous other challenges in two pro se briefs.[3] "[A]lthough generally we do not consider pro se briefs when a party is represented by counsel," Wayne v. Benson, 89 F.3d 530, 535 (8th Cir. 1996), we granted Akiti leave to file these briefs with the condition that we would determine

---

[3]Akiti tried to file a third pro se brief, but we denied his request and have not considered the arguments in that brief.

what weight, if any, to give to them.  We have considered Akiti's additional pro se arguments and have determined that they are either waived, moot, or without merit.

Accordingly, we affirm the district court's judgment.

_____