**NOT RECOMMENDED FOR FULL TEXT PUBLICATION**
File Name: 18a0460n.06

**No. 17-3938**

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED**<br>Sep 05, 2018<br>DEBORAH S. HUNT, Clerk |
| Plaintiff–Appellee, | ) | |
| | ) | **ON APPEAL FROM THE** |
| | ) | **UNITED STATES DISTRICT** |
| v. | ) | **COURT FOR THE NORTHERN** |
| | ) | **DISTRICT OF OHIO** |
| | ) | |
| MARC MONTGOMERY, | ) | |
| Defendant–Appellant. | ) | |
| | ) | |

OPINION

Before: BATCHELDER and CLAY, Circuit Judges; and SARGUS, District Judge.*

**SARGUS, District Judge.** Following trial, a jury found Appellant Marc Montgomery ("Montgomery") guilty of aiding and abetting Levert Bates ("Bates") in the armed robbery of Key Bank in violation of 18 U.S.C. § 2113(a), (d) (count one), and of aiding and abetting Bates in using and carrying, and brandishing a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A) (count two). The trial court granted Montgomery's judgment of acquittal for the brandishing element of count two. On August 28, 2017, the trial court sentenced Montgomery to eighty months imprisonment on count one and sixty months on count two, to run consecutively. (ECF No. 72.)

---

* The Honorable Edmund A. Sargus, Jr., Chief United States District Judge for the Southern District of Ohio, sitting by designation.

At the sentencing, the trial court applied a two-level enhancement under USSG § 2B3.1(b)(4)(B), finding it reasonably foreseeable to Montgomery that Bates would physically restrain a bank employee during the course of the robbery. Following sentencing, the district court imposed its judgment on August 28, 2017. (ECF No. 75.) Thereafter, Montgomery filed a timely notice of appeal on August 31, 2017. (ECF No. 76.)

Montgomery now challenges his conviction based on the sufficiency of the evidence and also challenges application of the two-level enhancement. We find the prosecution presented and the jury relied on sufficient evidence to find Montgomery guilty of aiding and abetting an armed bank robbery. We further find that the trial court properly applied the two-level enhancement. We therefore **AFFIRM** Montgomery's conviction and the sentence he received.

## I.

On November 20, 2016, an armed robbery of Key Bank occurred in Garfield Heights, Ohio at 9:20 AM. That morning, Montgomery rode with Bates to the bank. At some time prior to the robbery, Bates informed Montgomery that he planned to rob the bank. (Appellant Br. at 18, Doc. 24 (Montgomery admits that he knew about Bates' plan to rob the bank "before Mr. Bates went to commit the robbery.").) Evidence at trial showed that Montgomery and Bates were waiting in the bank's parking lot before 9:00 AM and then that they drove through the parking lot at 9:10 AM. After seeing a police car parked at a nearby store, Montgomery warned Bates of the police presence and drove with him to investigate whether the police remained in the area. Bates and Montgomery ultimately parked on a street near the bank.

Video footage shows Bates leaving the car and walking towards the bank. Then, a few minutes later, Bates returned to the car where he put on a mask and grabbed his gun and duffel bag. Bates reported that Montgomery knew he had a gun and that "the two discussed and agreed to rob the bank using the firearm." (Sealed Presentence Report at 4, Doc. 7.) Montgomery admits

that he saw the gun prior to the robbery and asked Bates "[w]hat are you going to do?" (Sentencing Tr. 7:12–15, ECF No. 88); (*Id.*; GEX 17C, Timestamp 1:36:30–1:42:12.)

Upon entering the bank, Bates pointed his loaded firearm at the first teller, Mary Sutton ("Sutton"), and forced her to give him money from her teller drawer. Bates then forced Sutton to accompany him to the vault, where a second teller, Susan Lowe ("Lowe"), was working. Bates ordered Lowe to put the vault's contents in his duffle bag, threatening that if she failed to do so he would "blow [her] head off." (Trial Tr. Lowe Test. at 108:11–24.) Lowe put the money in the bag, along with a GPS bait pack. Bates then left the bank and got into the passenger side of the car.[1] Montgomery then drove Bates to Montgomery's house, where Montgomery lived, which is approximately one to two miles from the bank.

Seventeen minutes later, Garfield Heights Police found Montgomery and Bates at Montgomery's mother's house. Officer Matthew Krejci testified that when he walked up the driveway, he witnessed Montgomery holding a large stack of money. Police apprehended Montgomery and Bates, who were standing near "[a] green duffle bag with U.S. currency in and around [it] and a black semiautomatic handgun next to the bag." (Trial Tr. Cramer Test. at 20–21.) The money recovered from the scene matched the bank's amount of loss, about $55,000.

Following Montgomery's trial, the jury convicted him of count one, aiding and abetting armed bank robbery, in violation of 18 U.S.C. § 2113(a) and (d), and of count two, aiding and abetting using, carrying, and brandishing a firearm in relation to the armed bank robbery, in violation of 18 U.S.C. § 924(c)(1)(A).

---

[1] The parties dispute what Montgomery did while Bates entered the bank. Whether he went to the gas station down the street or not is not relevant here based on Montgomery's actions post-robbery.

Montgomery moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29, and the trial court granted the motion in part on the brandishing a firearm element, finding that "while there was sufficient evidence of Defendant's intent that Levert Bates "carry or use" a firearm during the robbery, there was insufficient evidence that Defendant intended Bates to 'brandish' a firearm." (Order on Mot. for J. of Acquittal at 3, ECF No. 43.) The trial court ultimately denied the remainder of Montgomery's motion after the close of evidence. At sentencing, over Montgomery's objection, the court applied a two-level enhancement under USSG. § 2B3.1(b)(4)(B), finding it foreseeable to Montgomery that Bates would forcibly move a bank employee during the course of the robbery.

Montgomery appeals, challenging his conviction for sufficiency of the evidence and the application of the sentencing enhancement.

## A. Sufficiency of the Evidence

Montgomery asserts the evidence presented at trial does not support a finding that he aided and abetted Bates in the robbery but, rather, that the evidence shows at most he served as an accessory after the fact. In support, he argues that his conduct did not arise until after the robbery took place, when he drove Bates from the bank to his house.

This Court "review[s] a challenge to the sufficiency of the evidence supporting a criminal conviction *de novo*," *United States v. Robinson*, 813 F.3d 251, 255 (6th Cir. 2016), with the defendant "bear[ing] a very heavy burden" of persuasion. *United States v. Wright*, 774 F.3d 1085, 1088 (6th Cir. 2014) (quoting *United States v. Prince*, 214 F.3d 740, 746 (6th Cir. 2000)). In reviewing sufficiency, "[t]he question is 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

Thus, the defendant can prevail "only if, viewing the record as a whole, the judgment is not supported by substantial and competent evidence." *Id.* (quoting *United States v. Blakeney*, 942 F.2d 1001, 1010 (6th Cir. 1991)).

To sustain a conviction for armed bank robbery under Section 2113(a) and (d), the government was required to establish:

> (1) that by force or threat of force; (2) the defendant attempted to take from a person in another's presence an item of value; (3) that is in the custody or control of a bank; and (4) in doing so, placed in jeopardy the life of any person by use of a dangerous weapon or device.

*United States v. Davis*, 306 F.3d 398, 408–09 (6th Cir. 2002). "Aiding and abetting requires that a defendant in some sort associate himself with the venture, that he participate[] in it as something he wishes to bring about, and that he seek by his action to make it succeed." *United States v. Perales*, 534 F. App'x 502, 504 (6th Cir. 2013) (quoting *United States v. Lowery*, 60 F.3d 1199, 1202 (6th Cir. 1995)). Montgomery does not contest that Bates committed the crime of bank robbery but argues that the government did not show he aided and abetted Bates. To prove aiding and abetting, the government had to establish: "(1) an act by [Montgomery] that contributed to the commission of the crime; and (2) [Montgomery's] intent to aid in the commission of the crime." *Id.* at 504–05 (citation omitted). In contrast, a person is guilty of serving as an accessory after the fact when he or she, "knowing that an offense against the United States has been committed, receives, relieves, comforts or assists the offender in order to hinder or prevent his apprehension, trial or punishment." 18 U.S.C. § 3.

Montgomery's argument fails because it ignores several significant pieces of evidence. Montgomery admitted that he knew Bates intended to rob the bank before the crime took place, that he warned Bates about the presence of police near the bank, and that he rode with Bates to investigate whether the police were still nearby. And it is undisputed that Montgomery served as

Bates' getaway driver after watching Bates walk into the bank equipped with a bag, a gun, and a ski mask. This evidence shows that Montgomery associated himself with the robbery, encouraged its commission, and contributed to its success. The evidence is therefore sufficient to support Montgomery's conviction for aiding and abetting the armed bank robbery. *See Lowery,* 60 F.3d at 1202.

Further in support of the jury's conviction, Officer Krejci testified that when he tracked Montgomery and Bates to Montgomery's house he found Montgomery in the garage holding a stack of cash while standing next to Bates and a duffel bag full of cash matching the loss the bank incurred. As the trial court observed at Montgomery's sentencing,

> . . . it makes no sense at all that if Bates had been the robber and you had no involvement that you'd be sitting there sharing money with him in your garage . . . . In fact, the opposite would be true. If Bates had done it on his own, the last thing he would have wanted to do was let you know how much money he'd gotten.

(Sentencing Tr. 22:13–20, ECF No. 88.) This rings especially true here, as Bates managed to obtain roughly $55,000 from the bank. A jury could therefore infer that Montgomery further supported the commission of the crime by assisting with the planning of the robbery and agreeing in advance to serve as the getaway driver. *See United States v. Akiti*, 701 F.3d 883, 887 (8th Cir. 2012) ("Because the evidence shows that Akiti met with Tang before the robbery, drove him to and from the robbery, and split the money from the robbery, a reasonable jury also could have concluded beyond a reasonable doubt that Akiti knew a credit-union robbery was being committed and knowingly acted in some way for the purpose of aiding the robbery.").

Montgomery relies on *Brown v. Palmer*, 441 F.3d 347 (6th Cir. 2006), to support his assertion that there was insufficient evidence to support his conviction. In contrast to the instant case where Montgomery knew Bates planned to rob the bank with a gun and drove Bates from the robbery, in *Brown* "[t]he state offered no evidence that Brown had ever met the gunman prior to

arriving at the gas station, that Brown possessed a weapon or handed one to the gunman, or that Brown knew that the gunman was going to commit a robbery and carjacking." *Id.* at 352. Thus, *Brown* is inapposite.

We therefore find the conviction for aiding and abetting Bates in the armed bank robbery is supported by sufficient evidence.

## B. Application of Sentencing Enhancement USSG § 2B3.1(b)(4)(B)

Montgomery challenges the trial court's application of a two-level sentencing enhancement under USSG § 2B3.1(b)(4)(B) based on Bates' forcing Sutton to accompany him to the vault during the robbery. The Court reviews a trial court's factual determinations underlying an application of a sentencing guideline for clear error and its legal conclusions *de novo*. *United States v. Angel*, 576 F.3d 318, 320 (6th Cir. 2009). "Whether the criminal acts of others in a jointly undertaken criminal activity are reasonably foreseeable is a question of fact, reviewable only for clear error." *United States v. Canestraro*, 282 F.3d 427, 433 (6th Cir. 2002) (footnote omitted). Facts found for sentencing purposes need only be supported by a preponderance of the evidence. *United States v. Gates*, 461 F.3d 703, 708 (6th Cir. 2006), *cert. denied*, 549 U.S. 1041 (2006).

United States Sentencing Guidelines Section 2B3.1(b)(4)(B) applies a two-level sentencing enhancement "if any person was physically restrained to facilitate commission of the offense or to facilitate escape." The application note to Section 2B3.1 explains that "[t]he guideline provides an enhancement for robberies where a victim was forced to accompany the defendant to another location . . . ." USSG § 2B3.1 Applic. Note background. In calculating the guideline range, a court must consider not only the defendant's own actions, but also any other individuals' actions that were "(i) within the scope of the jointly undertaken criminal activity, (ii) in furtherance of that

criminal activity, and (iii) reasonably foreseeable in connection with that criminal activity." USSG § 1B1.3(a)(1).

Montgomery does not dispute that Bates restrained Sutton when he forced her to accompany him to the bank's vault. Rather, he contests the enhancement, asserting Bates' actions in restraining Sutton were unforeseeable to him. The trial court's determination that it was foreseeable to Montgomery that Bates would restrain a bank employee during the robbery is factual and is therefore reviewed for clear error. *See Canestraro*, 282 F.3d at 433.

Montgomery "need not have committed [the act of restraining Sutton] for the enhancements to apply; rather, he need only have known it was 'reasonably probable' that a co-participant would commit them." *United States v. Carpenter*, 819 F.3d 893 (6th Cir. 2016), *rev'd on other grounds*, 138 S. Ct. 2206. "As a general matter, an accomplice to robbery should foresee that robbery likely entails physical restraint or worse." *Id.* (citation omitted). As Montgomery asserts, "foreseeable" is defined as conduct "such that a person of ordinary prudence would expect [the conduct] to occur or exist under the circumstances." *Foreseeable*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/foreseeable (last visited June 11, 2018). The application note to Section 1B1.3 guides the Court with the following example of what the Guidelines finds foreseeable:

> . . . two defendants agree to commit a robbery and, during the course of that robbery, the first defendant assaults and injures a victim[,] [t]he second defendant is accountable for the assault and injury to the victim (even if the second defendant had not agreed to the assault and had cautioned the first defendant to be careful not to hurt anyone) because the assaultive conduct was within the scope of the jointly undertaken criminal activity (the robbery), was in furtherance of that criminal activity (the robbery), and was reasonably foreseeable in connection with that criminal activity (given the nature of the offense).

USSG §1B1.3 Applic. Note 3(D).

Here, viewed together, the circumstances of the robbery show no clear error in the application of the sentencing enhancement. Montgomery was aware Bates entered the bank with the intent to rob it and that Bates not only brought a gun in with him, but that he intended to use it during the course of the robbery. Sutton, the bank teller, was working near the front door of the bank fixing a sign when Bates walked in. She was the only bank employee working in the front area, while Lowe was working in the vault. She testified, "[a] man came in the door, and I looked up at him because I wanted to acknowledge him. And I asked him, '[h]ow can I help you?' and he had a really big green bag and he lifted up his head and he said, '[f]ill this bag up or I'm going to shoot you.'" (Trial Tr. Sutton Test. at 38:9–25; 39:1–10.) She then went over to her drawer and emptied it for him. Bates then forced Sutton to accompany him to the vault where Lowe was working. Sutton explained "he said 'Open the door' and I told him I couldn't. He said, 'Open the door or I'm going to shoot you.'" (Trial Tr. Sutton Test. at 39:14–25.) From inside the vault Bates was able to obtain more than $55,000.

Bates' restraint of Sutton to gain access to the bank's vault was within the scope of and in furtherance of the robbery that the jury convicted Montgomery of aiding and abetting. Montgomery was with Bates prior to the robbery and was then available to drive him directly from the bank to his house. The trial court could, therefore, infer for the purposes of sentencing that Montgomery was aware at the time he drove Bates from the bank that the robbery took longer than it would have for Bates to only take money from the teller drawer. Indeed, the trial court noted during sentencing that "most bank robberies are in the range of [$]2[,000] to $5,000" and questioned "so why would Bates, if you had not been involved with the planning of the robbery before . . . ever open the satchel to you to let you know that he had collected over $50,000?" (Sentencing Tr. 22:10–24, ECF No. 88.)

Because Montgomery knew of the robbery before it took place and was aware that Bates was armed, it was not clearly erroneous for the trial court to find it reasonably foreseeable to Montgomery that Bates would engage in conduct to merit the enhancement.[2] Moreover, Montgomery admits that a substantial number of bank robberies – nearly 15% – involve physical restraint. Based on the evidence produced a trial, we find no clear error in the application of the enhancement. *See Carpenter*, 819 F.3d at 893.

## II.

For the foregoing reasons, we **AFFIRM** Montgomery's conviction and the application of the sentencing enhancement.

---

[2] We also note that the total applicable guideline range for Montgomery as calculated by United States Pretrial Services was 360 months to life and that the trial court sentenced him to consecutive sentences of 80 months and 60 months. (Sealed Presentence Report at 9.)