**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 17-4579**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

AQUABEUS MOORE,

Defendant - Appellant.

Appeal from the United States District Court for the District of South Carolina, at Charleston.  Richard Mark Gergel, District Judge.  (2:15-cr-00386-RMG-2)

Submitted:  September 11, 2020                           Decided:  February 3, 2021

Before WILKINSON and MOTZ, Circuit Judges, and Kenneth D. BELL, United States District Judge for the Western District of North Carolina, sitting by designation.

Affirmed by unpublished opinion.  Judge Bell wrote the opinion, in which Judge Wilkinson and Judge Motz joined.

Sharnaisha Naki Richardson-Bax, BAX LAW FIRM, PA, Beaufort, South Carolina, for Appellant.  Sherri A. Lydon, United States Attorney, Columbia, South Carolina, Emily Evans Limehouse, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, South Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

BELL, District Judge:

A jury convicted Aquabeus Moore of conspiracy to commit Hobbs Act robbery, two counts of Hobbs Act robbery, and two counts of possession of a firearm in furtherance of a crime of violence. The district court sentenced Moore to 384 months and one day of imprisonment. Moore advances a number of arguments on appeal, each of which are addressed below. For the reasons that follow, we affirm.

I.

This case arises from a conspiracy to rob Rolex watches from two jewelry stores in South Carolina. The Government alleged that Moore was a member of this conspiracy and participated in the commission of the robberies by aiding in their preparation and acting as the getaway driver. In its indictment, the Government charged Moore with one count of conspiracy to commit Hobbs Act robbery and two counts of Hobbs Act robbery, in violation of 18 U.S.C. § 1951, and two counts of possession of a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c).

At trial, the Government presented evidence showing that on February 19, 2015, two masked men entered Sylvan's Jewelers ("Sylvan's") in Columbia, South Carolina around 10:30 a.m. One man carried a handgun and the other carried a hammer. The accomplice with the gun restrained the employees while the other used the hammer to smash the glass cases containing the Rolex watches. After obtaining the watches, the men quickly left.

Surveillance footage from outside of Sylvan's recorded a third accomplice driving an older-model Oldsmobile dropping the two men off out front of Sylvan's, waiting out

2

front of the store while the robbery occurred, and quickly driving off as soon as the two men returned to the car. Two days after the Sylvan's robbery, investigators located the Oldsmobile just outside of Columbia. It contained evidence consistent with the robbery, including broken glass and a jewelry store display item.

On March 4, 2015, a robbery occurred at Demetre Jewelers ("Demetre") in Charleston, South Carolina under circumstances nearly identical to the February 19, 2015 robbery at Sylvan's. A Demetre employee testified that two masked robbers entered the store around 10:00 a.m. One man carried a gun and used the gun to force the employee to the ground while the second man used a hammer to smash the glass display case containing the Rolex watches. The employee witnessed the two men leave the store and jump into the passenger side of a vehicle waiting out front. The vehicle immediately drove away, indicating that a third accomplice remained inside the vehicle while the robbery took place. Security camera footage showed that the vehicle out front was a dark colored minivan.

Investigators were able to link Moore to the cars used in the Sylvan's and Demetre robberies through witnesses, DNA evidence, and latent fingerprints. Text messages discovered on phones connected to Moore and his co-conspirators indicated Moore was involved in the planning and preparation of the robberies. For example, a message sent by the leader of the conspiracy to Moore asked if he was "ready to be a driver on one of them missions I'll give you four bands" and another reminded Moore to "[g]et the gloves three pair." Cell tower data showed that a cell phone attributed to Moore travelled from the Atlanta area to Columbia the night before the Sylvan's robbery, was in the area of the Sylvan's robbery when it occurred, and travelled back to Atlanta after the robbery.

3

Similarly, Moore's phone travelled from Atlanta to Charleston the night before the Demetre robbery, was in the area of the Demetre robbery at the time it occurred, and travelled back to Atlanta immediately after the robbery. Cell records also showed that Moore communicated with the leader of the conspiracy for 17 minutes during the time of the Demetre robbery through a cell tower in downtown Charleston.

Based on the cell phone records and fingerprints left on the van, law enforcement was able to obtain an arrest warrant for Moore. At the time of his arrest, Moore had a firearm in his left rear waistband that strongly resembled the firearm captured on surveillance video during the Demetre robbery. During an interview with law enforcement, Moore admitted to his involvement in the Charleston robbery, and specifically that he had acted as the getaway driver. Moore also allowed law enforcement to download the contents of his phone. Agents found two photos of a Rolex watch that shared the same serial number as one of the watches reported stolen from Sylvan's.

After a four-day trial, the jury convicted Moore on all counts. The district court sentenced Moore to imprisonment for 384 months and one day. He noted this timely appeal.

II.

Moore first contends that the district court erred by denying his motion for judgment of acquittal because there was insufficient evidence to convict him on the § 924(c) charges. Moore was charged with violating § 924(c) as a principal, aider and abettor, and co-conspirator. The general verdict form did not specify which theory the jury relied on for the § 924(c) convictions. Moore alleges that the Government failed to provide evidence

4

that he had any knowledge that a firearm would be used in the robberies, especially no "advanced knowledge" that a firearm would be used so as to convict him under an aiding and abetting theory. We disagree with Moore's argument.

We review de novo a district court's denial of a motion for judgment of acquittal. *United States v. Cowden*, 882 F.3d 464, 473 (4th Cir. 2018). A jury verdict should be affirmed where, "viewing the evidence in the light most favorable to the prosecution, the verdict is supported by 'substantial evidence.'" *United States v. King*, 628 F.3d 693, 700 (4th Cir. 2011). "Substantial evidence" is "evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *United States v. Smith*, 451 F.3d 209, 216 (4th Cir. 2006). Moreover, throughout this Court's review, we "assume that the jury resolved any conflicting evidence in the prosecution's favor." *United States v. Jeffers*, 570 F.3d 557, 565 (4th Cir. 2009).

"Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal." 18 U.S.C. § 2(a). Thus, "[s]o long as all of the elements necessary to find [the defendant] guilty of the crime, whether as principal or as aider or abetter, were put before the jury, conviction will be proper." *United States v. Rashwan*, 328 F.3d 160, 165 (4th Cir. 2003). To prove aiding and abetting under § 924(c), the Government must show that the defendant actively participated in the underlying violent crime with *advance knowledge* that "one of his confederates will carry a gun." *Rosemond v. United States*, 572 U.S. 65, 77 (2014). "Advance knowledge" means "knowledge at a time the accomplice can do something with it—most notably, opt to walk away." *Id.* at 78.

Evidence of a defendant's advance knowledge need not be direct. This Circuit and other circuits have affirmed § 924(c) convictions on an aiding and abetting theory when there was only circumstantial evidence of a defendant's advance knowledge. *See, e.g., United States v. Benson*, 957 F.3d 218, 238 (4th Cir. 2020); *United States v. Jordan*, 945 F.3d 245, 259-61 (5th Cir. 2019); *United States v. Akiti*, 701 F.3d 883 (8th Cir. 2012); *Rosemond*, 572 U.S. at 77 (citing *Akiti* approvingly); *United States v. Henry*, 722 F. App'x 496, 499-500 (6th Cir. 2018); *United States v. Hinton*, 730 Fed. App'x 719, 724 (11th Cir. 2018). This Circuit has held that "where there is evidence that a defendant extensively participated in the planning of a robbery of the type that would generally necessitate the use of firearms, such evidence is sufficient to fulfill [the advance knowledge] requirement." *Benson*, 957 F.3d at 238.

While the Government does not contend that there was sufficient evidence to convict Moore on a principal theory, it does argue there was ample evidence to convict Moore on an aiding and abetting theory. The Court agrees. The Government presented extensive circumstantial evidence from which a jury could conclude beyond a reasonable doubt that Moore had advance knowledge that one of his confederates would carry a gun. Evidence showed that Moore was involved in the planning of the robberies and in close communication with the ringleader throughout the conspiracy. Witness testimony explained that Moore helped obtain the vehicles used in the robberies, purchased supplies in advance of the robberies, and travelled with his co-conspirators from the Atlanta area and stayed with them in the same hotel the night before the robberies. Moreover, the Sylvan's and Demetre robberies were of the type that would generally necessitate the use

6

of a firearm. The robberies occurred during normal business hours, when Moore would have known that employees and potential customers would be in the store, thereby necessitating the need for a firearm to restrain the victims while another obtained the Rolex watches. *See Benson*, 957 F.3d at 238 (discussing the circumstantial evidence in *Akiti* that supported the jury's § 924(c) conviction on an aiding and abetting theory, including that "the plan involved robbery during business hours when multiple employees were present (thereby necessitating a firearm)").

A reasonable jury could also infer Moore's advance knowledge of a firearm from his direct participation in the robberies. As the getaway driver, Moore was in close proximity to his armed accomplice moments before he entered the jewelry stores and moments after the commission of the robberies. Further, Moore participated in a second robbery even after a firearm was brandished in the first robbery. As *Rosemond* observed, a defendant's continued participation in the scheme after a gun has been displayed in the first robbery, permits the jury to "infer from his failure to object or withdraw" that he had the requisite foreknowledge that a gun would be used in the second. 572 U.S. at 78 n.9. And, at his arrest Moore possessed a firearm that strongly resembled the firearm captured on surveillance video during the Demetre robbery. Given evidence of Moore's substantial participation in the planning, preparation, and execution of the robberies, we conclude that a reasonable jury could have inferred that Moore had advance knowledge that a firearm would be used so as to convict him on an aiding and abetting theory.

Moreover, even if the Government presented insufficient evidence that Moore had advance knowledge that a firearm would be used, there was ample evidence to demonstrate

that it was reasonably foreseeable to Moore that a co-conspirator would possess a firearm under a *Pinkerton* theory of liability. Accordingly, the district court did not err in denying Moore's Rule 29 motion for acquittal.

III.

Second, Moore challenges the district court's application of the § 924(c) enhancement. When Moore was sentenced, because the firearm was brandished § 924(c)'s sentencing regime mandated a seven-year mandatory minimum sentence for a first conviction and a 25-year consecutive mandatory minimum for a second conviction, even when both convictions arose from a single proceeding. *See Deal v. United States*, 508 U.S. 129, 137 (1993). The district court, in accordance with statutory law at the time, imposed a seven-year sentence on Moore's first § 924(c) conviction and 25 years on his second. In total, Moore received a 32-year sentence for his § 924(c) convictions.

Moore first argues that his § 924(c) convictions are invalid because Hobbs Act robbery is not a crime of violence under *Johnson v. United States*, 576 U.S. 591 (2015), and *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018). This Court's decision in *United States v. Mathis*, 932 F.3d 242 (4th Cir. 2019) forecloses Moore's argument. In *Mathis* this Court held that "Hobbs Act robbery constitutes a crime of violence under the force clause of Section 924(c)." *Id.* at 266.

Moore's next argument is that the application of his § 924(c) enhancement is unconstitutional under the Eighth Amendment. However, this Court has repeatedly rejected Eighth Amendment challenges to lengthy sentences based on multiple § 924(c) convictions. *See, e.g.*, *United States v. Khan*, 461 F.3d 477, 494 (4th Cir. 2006).

8

Moore also argues that his sentence should be vacated in light of the First Step Act's recent amendment of § 924(c). However, this Court has already decided that the benefit of the First Step Act does not apply to defendants like Moore. In *United States v. Jordan*, 952 F.3d 160 (4th Cir. 2020), this Court looked to the text of the First Step Act, "which provides that § 403(a)'s 'amendments' to § 924(c) 'shall apply to any offense that was committed before the date of enactment of this Act, *if a sentence for the offense has not been imposed as of such date of enactment*.'" *Id.* at 171 (quoting § 403(b), 132 Stat. at 5222). Because Moore's sentence was imposed in August of 2017, more than a year before the "date of the enactment" of the First Step Act on December 21, 2018, the First Step Act does not apply to Moore's sentence.

IV.

Third, Moore challenges the district court's evidentiary ruling admitting the firearm seized from his waistband during his arrest. At trial, the district court admitted the gun over Moore's objection under Rule 403 of the Federal Rules of Evidence. Specifically, Moore argues that "[a]llowing the gun into evidence without any offer of proof that it was indeed the firearm used in the robbery was more prejudicial than probative."

We review the district court's evidentiary rulings for abuse of discretion. *United States v. Faulls*, 821 F.3d 502, 508 (4th Cir. 2016). Under Rule 403, relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "Where the evidence is probative, the balance under Rule 403 should be struck in favor of admissibility, and

9

evidence should be excluded only sparingly." *United States v. Lentz*, 524 F.3d 501, 525 (4th Cir. 2008) (internal quotations omitted).

We discern no abuse of discretion in the district court's evidentiary ruling. The gun found on Moore at his arrest was probative of his role in the charged conduct, especially in light of his defense that he had no knowledge a gun would be used in the robberies. Law enforcement testified that the gun found in Moore's waistband appeared to be very similar to the firearm in the Demetre surveillance video and went on to compare the firearm found on Moore to the still images from the Demetre surveillance video. Cheyenne Shuler, an employee at Sylvan's Jewelers, described the gun used in the robbery as "something long and silver" during her testimony at trial. This description matched the firearm found in Moore's waistband. Moreover, the firearm and the still images from the Demetre surveillance video were both admitted into evidence such that the jury, as the finder of fact, could compare the firearms and come to their own conclusion. Thus, given this evidence and the deference given to district court judges on evidentiary rulings, we hold the district court acted within its discretion in admitting the firearm into evidence.

V.

Moore's fourth contention of error relates to another evidentiary ruling by the district court. Moore argues that the district court erred in admitting into evidence summaries of cell phone data compiled from phones tied to Moore and another co-conspirator. Moore claims that these summaries, which were produced by law enforcement, were "manipulated and annotated by the government's expert witness" and were improperly admitted into evidence.

10

As stated above, this Court reviews a district court's evidentiary rulings for abuse of discretion. *Faulls*, 821 F.3d at 508. Federal Rule of Evidence 1006 states, in relevant part, that a party "may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court." Fed. R. Evid. 1006; *see also United States v. Janati*, 374 F.3d 263, 272 (4th Cir. 2004). Its purpose is to reduce the volume of written documents that are introduced into evidence by allowing in evidence accurate derivatives. *Id.* (citing *United States v. Bakker*, 925 F.2d 728, 736 (4th Cir. 1991)).

We find no abuse of discretion in the admission of these summary exhibits. Law enforcement produced these charts and maps using voluminous data from the cell phones and the service providers' cell towers. As explained at trial, a cell phone communicates with towers (usually the tower closest to the phone) when a person sends a text, makes or receives a voice call, or uses cellular data. Service providers record these communications. From these records, law enforcement can extrapolate a probable area in which the phone was located over time.

The charts and maps created by law enforcement accurately summarized the voluminous cell phone data. Indeed, Moore does not contest the admission of the cell phone records or other cell phone data summarized in the exhibits. Rather, Moore claims that the charts and maps are misleading. He specifically points to the pinpoints on the map and the arrows used to signify the alleged direction of travel before and after the robberies. The record, however, shows that the law enforcement officer repeatedly noted at trial that the pinpoints were the locations of the cell towers that the phones had utilized and the arrows

11

between the pinpoints showed the general direction the cell phones were travelling, which was corroborated by the times the cell towers were pinged. Furthermore, Moore's counsel had the opportunity to, and did, cross-examine the law enforcement officer regarding the markings on the map and the techniques he used in formulating his opinions.

Moore also challenges the district court's decision to admit these summary exhibits under Rule 403. The location of Moore's cell phone in the days before, during, and after the robberies is highly probative of his guilt of the charged crimes and Moore has failed to establish how the probative value of this evidence was substantially outweighed by its prejudicial effect. Accordingly, we find no abuse of discretion in the district court's admission of these exhibits.

VI.

Moore's final argument assigns error to the district court's denial of his motion for a new trial. Federal Rule of Criminal Procedure 33 states that "the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). A district court's Rule 33 decision is reviewed for abuse of discretion. *United States v. Fulcher*, 250 F.3d 244, 249 (4th Cir. 2001). Where the evidence in the record is sufficient to support the jury's verdict, a Rule 33 motion must be denied. *United States v. Singh*, 518 F.3d 236, 250 (4th Cir. 2008). In analyzing whether newly discovered evidence requires a new trial, the court looks to five factors:

> (a) the evidence must be, in fact, newly discovered, i.e., discovered since the trial; (b) facts must be alleged from which the court may infer diligence on the part of the movant; (c) the evidence relied on must not be merely cumulative or impeaching; (d) it must be material to the issues involved; and

12

> (e) it must be such, and of such nature, as that, on a new trial, the newly discovered evidence would probably produce an acquittal.

*Robinson*, 627 F.3d at 948 (citing *United States v. Custis*, 988 F.2d 1355, 1359 (4th Cir. 1993)). Generally, all five elements must be established before a new trial is permitted. *United States v. Moore*, 709 F.3d 287, 292 (4th Cir. 2013); *United States v. Fulcher*, 250 F.3d 244, 249 (4th Cir. 2001).

Several months after his conviction, Moore received a letter from the FBI Forensics Lab concerning the testimony of DNA expert Heather LaSalle. LaSalle testified at Moore's trial to the likelihood that the DNA obtained from the recovered vehicles came from Moore and his co-conspirators. While LaSalle correctly testified that Moore was a contributor to, or the source of, a DNA profile on swabs from inside the van ten times during the course of trial, the letter identified eight slight deviations from the FBI's recommended language.

On January 25, 2018, Moore filed a motion for a new trial pursuant to Rule 33 in the district court. He claimed he was entitled to a new trial based on the newly discovered evidence regarding the inaccuracies of LaSalle's testimony. On March 22, 2018, the district court denied Moore's motion for a new trial, holding that the new evidence would not "probably produce an acquittal" because the discrepancies between LaSalle's language and the language recommended by the FBI were so subtle. The district court also noted that the FBI, although acknowledging the misstatements made by its expert, never "recanted its position that the DNA test results in this case are many millions of times more likely if the DNA recovered from the van is from [Moore]." The district court concluded that "no reasonable juror would change his or her opinion of the evidence based on the barely

13

perceptible phrasing changes the FBI says Ms. LaSalle should have made in her testimony."

Given the overwhelming evidence of Moore's guilt beyond the DNA evidence and the fact that the FBI has never recanted its overall position regarding the DNA results, the district court properly denied Moore's motion for a new trial.

VII.

Accordingly, we affirm the district court's judgment. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this Court and argument would not aid the decisional process.

*AFFIRMED*